J-A27023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PATRICIA CARTER, AN ADULT INDIVIDUAL, CAROL BETH WILSON, AN ADULT INDIVIDUAL, JOHN ALLEN WILSON, AN ADULT INDIVIDUAL AND ELIZABETH WILSON, AN ADULT INDIVIDUAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| RICHARD M. FANNING AND DEBRA J. FANNING, HUSBAND AND WIFE, JEFFREY J. DUTTON AND LISA A. DUTTON, HUSBAND AND WIFE, LARRY N. CERCIELLO AND KANDY S. CERCIELLO, HUSBAND AND WIFE | |
| v. | |
| RANGE RESOURCES-APPALACHIA, LLC | No. 584 WDA 2017 |

Appeal from the Order March 16, 2017
In the Court of Common Pleas of Washington County
Civil Division at No(s): No. 2014-5859

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED JANUARY 30, 2018**

Patricia Carter, Carol Beth Wilson, John Allen Wilson, and Elizabeth Wilson (collectively "Appellants"), appeal from the order entered March 16, 2017. The order granted summary judgment in favor of Richard M. Fanning and Debra J. Fanning, husband and wife, Jeffrey J. Dutton and Lisa A. Dutton, husband and wife, and Larry N. Cerciello and Kandy S. Cerciello,

husband and wife (collectively "Appellees"), and Range Resources-Appalachia, LLC[1] ("Intervenor-Appellee" or "Range").[2]  We affirm.

The trial court set forth the relevant facts and procedural history of this matter as follows:

On September 24, 2014, [Appellants], filed a four (4) count complaint against individual [Appellees] Fanning, Dutton and Cerciello. The Complaint requested that the Court quiet [Appellees'] Fanning, Dutton and Cerciello's title either completely or by "one-half" in certain real property. The Complaint also sets forth claims of unjust enrichment and slander of title. [Appellants] contended that they succeeded to the title of Berdie Wilson, daughter of Hugh Hanna, a prior record owner of the Hanna Tract [or "the property"]. [Appellants] advanced that Hugh Hanna made a parol gift of the oil and gas estate to Berdie Wilson. On November 26, 2014[,] this court granted Range's petition to intervene as a party defendant.

On November 24, 2014, [Appellees] Fanning, Dutton and Cerciello filed preliminary objections. On December 3, 2014 Range filed separate preliminary objections. [Appellees] Fanning, Dutton and Cerciello alleged that the recorded "chain of title" from 1825 to 2014 does not indicate that a severance of oil and gas occurred. By virtue of three (3) separately recorded deeds and their record chain of title, [Appellees] Fanning, Dutton and Cerciello claim exclusive ownership of all right title and interest in the oil and gas [underlying] the Hanna Tract. (See Paragraphs 3, 4 and 5 Fanning-Dutton Cerciello Preliminary Objections to the Original Complaint). [Intervenor-Appellee] Range filed

_____

[1] Range intervened as a current lessee of the oil and gas underlying the property.

[2] As will be discussed in greater detail, the March 16, 2017 order disposed of all claims and all parties, and it made final an earlier order sustaining preliminary objections in favor of Appellees with respect to Count II of Appellants' Amended Complaint.  Pa.R.A.P. 341(b)(1).

preliminary objections that included a demurrer and a claim of lack of specificity.

On May 7, 2015, this court issued an opinion and order sustaining [Appellees'] preliminary objections. The court did not dismiss the action. Instead, [Appellants] were given twenty (20) days to file an amended complaint.

On May 27, 2015[,] [Appellants] filed an Amended Complaint. In the Amended Complaint, [Appellants] reiterated their previous allegation that as the heirs of Berdie Wilson's Estate[,] they owned "100%" of the oil and gas underlying the Hanna Tract. Specifically, Carter and Wilson asserted that Hugh Hanna "gifted" the oil and gas estate to Berdie Wilson. (See Amended Complaint ¶[¶] 57 and 58). [Appellants] did not plead the existence of a writing that specifically provided for the gift. Instead, [Appellants] alleged that circumstantial evidence demonstrated the existence of a parol gift. (See Amended Complaint ¶[¶] 11-56)[.] In the alternative, [Appellants] alleged that the "Will of Hugh Hanna severed the surface of the farm and the coal of the Property (Hanna Tract) from the oil and gas." (See Amended Complaint ¶ 82) [Appellants] further alleged that the interests in the oil and gas passed "pursuant to the laws of intestacy." (See Amended Complaint ¶ 83) [.] On that basis, [Appellants] assert they are the heirs of Berdie Wilson and entitled to a one-half interest in the oil and gas lying beneath the Property. (See Amended Complaint, ¶[¶] 83-85). [Appellants] filed preliminary objections to the Amended Complaint.[2]

[2] On June 12, 2015, [Appellees] Fanning, Dutton and Cerciello filed objections which raised a demurrer to all 4 counts of the Amended Complaint; sought a more specific pleading with regard to the time, date and place of the alleged parol gift of oil and gas interests and moved to strike all counts of the complaint. On June 16, 2015[,] [Intervenor-Appellee] Range filed 4 objections to the Amended Complaint. In each, Range asserted a demurrer to each of the counts of the Amended Complaint.

On December 31, 2015, this court issued a memorandum and order sustaining objections to Count II of [Appellants'] Amended Complaint and overruling all other objections.[3] With regard to the dismissal of Count II of the Amended Complaint,

- 3 -

this court determined that [Appellants] insufficiently pleaded the severance of the oil and gas estate from the surface of the "Property." More specifically, this court sustained preliminary objections to Count II of the original complaint and Count II of the amended complaint because neither the Hugh Hanna Will nor the later Deed of Distribution contained a reservation of oil and gas for the Hanna Tract. In Count II, [Appellants] pleaded "in the alternative." (See Amended Complaint ¶ 80) [.] [Appellants] alleged that Hugh Hanna's Will did not specifically provide for the distribution of the oil and gas estate and contained no residuary clause. On that basis, [Appellant] advanced that the oil and gas estate passed by the laws of intestacy and they had succeeded to Berdie Wilson's one-half interest.

> [3] By Amended Order of January 6, 2016 this court confirmed that it did not grant [Appellants] further leave to amend their complaint.

Relying on the Dunham Rule[3] and the decision of Butler v. Powers Estate ex.rel. [Warren], 65 A.3d 885, 896 ([Pa.] 2013)[, which reaffirmed the pronouncement in Dunham], this court could not overlook the significance of the absence of an oil and gas severance provision in the Deed of Distribution. Pursuant to the Dunham Rule, the express language of the Deed of Distribution showed that Berdie Wilson had conveyed her interests in her late father's estate to include any inheritable interest in the Hanna Tract without a reservation of the oil and gas estate. Thus, [Appellants] could not rest their claim upon the laws of intestacy but would have to prove that the rights to the oil and gas estate were transferred to Berdie Wilson prior to Hugh Hanna's death. Having previously afforded [Appellants] the opportunity to amend the original complaint for the same deficiency, this court found that a further amendment would not cure a "fatal defect" in [Appellants'] pleading of Count II.[4]

> [4] The parties when describing this court's decision have consistently restricted the ruling to a determination of the intent of Hugh Hanna's Will.

---

[3] The Dunham Rule provides that a reference to minerals in a reservation of rights in a private deed does not include oil and gas. **Dunham & Shortt v. Kirkpatrick**, 101 Pa. 36 (Pa. 1882).

Such an interpretation is not entirely accurate. The following passages from this court's last opinion determining preliminary objections provided:

[Appellants] must plead that the intent of Hugh Hanna in executing his devise, and the intent of his heirs in executing the distribution, was to sever the oil and gas rights to the property. They have not pleaded such facts. Instead, they pleaded a pattern and practice of use over the land by Berdie Wilson and her heirs and assignees. They pleaded that the will and the deed of distribution did not provide for the distribution of oil and gas underlying the property, and this failure to address such a portion of Hugh Hanna's estate evidences an intention to sever these interests. The established case law of the Commonwealth of Pennsylvania does not permit this assumption to be made; instead it requires the opposite. Hugh Hanna's will and the Deed of Distribution demonstrate no intention to sever the oil and gas rights sufficient to overcome the Dunham Rule.

(See Memorandum Opinion 12/31/2015)

The parties conducted discovery with regard to Counts I, III and IV of the Amended Complaint. Those counts include an action to quiet title (Count I), a claim of unjust enrichment seeking the imposition of a constructive trust and an accounting (Count [III]), and an action seeking damages for slander of title (Count IV).

Following discovery, both [Intervenor-Appellee Range] and [Appellees] filed motions for summary judgment.[5] [Appellees Fanning and Cerciello] asserted in their motion that "The paucity of evidence to support [Appellants'] claim is alarming." (See [Appellees'] Brief in Support p. 7) In summary, [Appellees] Fanning and Cerciello contend that no documentation or direct evidence supports [Appellants'] claim that Hugh Hanna prior to death, completed a parol inter vivos gift of oil and gas interests to Berdie Wilson. To the contrary, [Appellees] Fanning and Cerciello point out that the Property was encumbered by an oil and gas lease prior to Hugh Hanna's ownership. Identified as the "Gourley Lease," such lease was according to [Appellees]

- 5 -

Fanning and Cerciello subject to numerous assignments of record from 1889 to 1945. Such assignments did not include Berdie Wilson or her late husband Alex Wilson. [Appellees] Fanning and Cerciello charge that [Appellants'] claims are premised upon "unsupported inferences, conjecture and assumptions" that lack documentation memorializing, or the testimony of a living witness to the alleged oral gift. [Appellees] Fanning and Cerciello assert that the Statute of Frauds and the Pennsylvania Recording Act support the granting of summary judgment.

> [5] [Intervenor/Appellee Range] filed its motion on June 24, 2016. [Appellees] Fanning and Cerciello filed their motion for summary judgment on June 29, 2016. [Appellees] Jeffrey Dutton and Lisa Dutton did not file a motion for summary judgment. The Dutton[s] requested that counsel representing [Appellees] Fanning and Cerciello withdraw from representation of the Duttons who wished to proceed *pro se*. Such withdraw of counsel was granted on April 4, 2016.

In response, [Appellants] claim that "[t]he evidence garnered, when considered as a whole" demonstrates that Hugh Hanna made a gift of the oil and gas lying beneath the Hanna Tract to his daughter, Berdie Wilson. Specifically, [Appellants] allege that Berdie Wilson asserted dominion and control over the oil and gas during Hugh Hanna's lifetime. On that basis, [Appellants] proffer that "Berdie Wilson's actions with respect to the oil and gas underlying the Property evidenced her father's intention to make an immediate gift of the oil and gas to her." (See [Appellants'] Omnibus Brief p. 4)[.] Further, [Appellants] advance that the oil and gas lying beneath the property was not an asset of the estate of Hugh Hanna and was not "provided for" in Hugh Hanna's Will. ([Appellants'] Omnibus Brief p. 8)[.] [Appellants] claim they are the descendants of Berdie Wilson and have "100% ownership over" the oil and gas underlying the Property. [Appellants] assert that [Appellees'] summary judgment motions are nothing more than invitations for the court to weigh evidence. On this basis, [Appellants] contend that material issues of fact exist that a finder of fact at trial must determine.

Trial Court Opinion, 3/16/17, at 2-8.

On March 16, 2017, the trial court granted Appellees' motions for summary judgment, and dismissed Appellants' Amended Complaint with prejudice. The March 16, 2017 order made final all prior interlocutory orders including the December 31, 2015 order that sustained Appellees' preliminary objections to Count II in Appellants' Amended Complaint. The March 16, 2017 order disposed of all claims and all parties pursuant to Pa.R.A.P. 341(b)(1), and on April 12, 2017, Appellants filed a timely appeal. Both Appellants and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellants raise the following issues for this Court's consideration:

> 1. Did the Trial Court err when it granted summary judgment, dismissing Appellants' Amended Complaint with prejudice, by usurping the factfinder role and weighing Appellants' evidence to find that Appellants could not establish a *parol inter vivos* gift from Dr. Hugh Hanna to his daughter, Berdie Wilson?
>
> 2. Did the Trial Court err when it sustained the preliminary objections in the nature of demurrer as to Count II of Appellants' Amended Complaint by finding that the oil and gas underlying the property was encompassed within the surface estate and was not severed by the Will of Dr. Hugh Hanna, when such conclusion was not supported by the plain language in the instrument itself, the testator's intent, or the circumstances surrounding its execution?
>
> 3. Did the Trial Court err when it sustained the preliminary objections in the nature of demurrer as to Count II of Appellants' Amended Complaint by finding that the oil and gas underlying the property did not pass pursuant to the laws of intestacy when the oil and gas was not distributed as part of Dr. Hanna's Estate?

Appellants' Brief at 5.

Appellants' first issue challenges the trial court's grant of summary judgment. Our standard of review when evaluating a trial court's grant or denial of summary judgment is well settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Hall v. CNX Gas Co., LLC*, 137 A.3d 597, 601 (Pa. Super. 2016) (citation omitted).

The trial court provided an exhaustive analysis and rationale supporting its order granting summary judgment. Trial Court Opinion and Order, 3/16/17, at 8-68. After review, we are satisfied that the trial court thoroughly addressed and correctly disposed of Appellants' first issue on appeal. Accordingly, we affirm the order granting summary judgment in favor of Appellees on the basis of the trial court's opinion.[4]

---

[4] The parties are directed to attach a copy of the March 16, 2017 opinion and order in the event of further proceedings.

In Appellants' next two issues, they assail the trial court's order sustaining Appellees' preliminary objections.[5] Our standard of review for an order sustaining preliminary objections in the nature of a demurrer is as follows:

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections

---

[5] We note that while Appellants third issue concerns the laws of intestacy, Appellants' concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), never mentions intestacy.  It is well settled that any issue not raised in a court-ordered Pa.R.A.P. 1925(b) statement is deemed waived on appeal.  *Lazarski v. Archdiocese of Philadelphia*, 926 A.2d 459, 464 (Pa. Super. 2007).  However, to the extent that intestacy is fairly suggested by the tangential issues set forth in the Pa.R.A.P. 1925(b) statement, and in light of the fact that the trial court discussed intestacy in disposing of Appellees' preliminary objections, we will overlook this deficiency.

only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained. The complaint need not identify specific legal theories, but it must provide essential facts to support the claim. Assertions of legal rights and obligations in a complaint may be construed as conclusions of law, which have no place in a pleading.

*Estate of Rothberg*, 166 A.3d 378, 382 (Pa. Super. 2017) (citation omitted).

As noted above, the trial court sustained Appellees' preliminary objections to Count II of Appellants' Amended Complaint. In Count II of their Amended Complaint, Appellants alleged, in relevant part, the following:

81. The Will of Hugh Hanna severed the "surface of the farm" and the coal of the Property from the oil and gas, but did not provide for the distribution of the oil and gas underlying the Property.

82. Because Hugh Hanna did not provide by specific bequest for distribution of the oil and gas underlying and being produced on the Property and because the Will did not contain a residuary clause, the oil and gas interest passed pursuant to the laws of intestacy.

83. Hugh Hanna's wife, Elizabeth Hanna, elected against the Will of Hugh Hanna. As a result, the sole intestate heirs of Hugh Hanna's estate were Howard T.E. Hanna and Berdie H. Wilson, son and daughter, respectively.

84. The entirety of the oil and gas underlying the Property was owned, in equal shares, by Howard T.E. Hanna and Berdie H. Wilson.

85. [Appellants] are the heirs of Berdie H. Wilson, and [Appellants] now own a one-half interest in the oil and gas underlying the Property.

86. Despite this, through their actions, [Appellees] have continued to assert right, title and ownership over oil and gas underlying the Property through the execution of various oil and gas leases, such that the [Appellants'] right, title and interest in the oil and gas underlying the Property has been clouded and the [Appellants] have been precluded from fully enjoying their rights.

87. [Appellees] have no right, title or ownership to [Appellants'] one-half interest [in the] oil and gas underlying the Property.

88. [Appellants] are the rightful and legal owners of a one-half interest in the oil and gas underlying the Property and are therefore entitled to quiet enjoyment of their rights.

89. Accordingly, [Appellants] request this Court quiet title to the one-half interest of the oil and gas underlying the Property in favor of [Appellants] and against [Appellees] and for any and all additional relief this Court deems just and proper.

WHEREFORE, [Appellants] respectfully demand that this Honorable Court quiet title to the oil and gas underlying the Property, and award judgment in their favor and against [Appellees] as follows:

I. Quieting Title to a one-half ownership interest in the oil and gas underlying the Property against [Appellees] and all persons claiming under [Appellees];

II. For a decree to declare and adjudge [Appellants] own in fee simple the one-half (50%) ownership in the oil and gas underlying the Property and that [Appellees] have no estate, right, title, lien or interest in or to said property or any part thereof;

III. For decree to permanently bar [Appellees] and persons claiming under [Appellees] from asserting any estate right, title, lien or interest in or to the one-half interest of oil and gas underlying the Property adverse to [Appellants];

IV. For such other relief as the Court may deem just and proper, including attorney's fees and costs.

Appellants' Amended Complaint, 5/27/15, at ¶¶ 81-89.

While the trial court's conclusions with respect to its rationale for sustaining Appellees' preliminary objections are referenced in the March 16, 2017 opinion adopted above, the trial court previously provided a thorough explanation in its December 31, 2015 opinion following the filing of Appellants' Amended Complaint:

> Count II of the Amended Complaint alleges [Appellants] own a 50% interest in the property resulting from the laws of intestacy and an election Elizabeth Hanna took against the will of Hugh Hanna. [Appellants] claim that Hugh Hanna, by continually referring to the "surface" of his property in his will, "severed" the surface of the property from the oil and gas lying underneath. Amended Complaint ¶¶ 31, 32. Elizabeth Hanna's election to take against the will resulted in an Orphans' Court deed of distribution which did not include these allegedly severed oil and gas interests. As a result, [Appellants] claim they pass through the laws of intestacy in part to [Appellants]. Amended Complaint ¶ 36.
>
> While the argument flows logically, the Court addressed this logic in its previous order on preliminary objections:
>
>> [Appellants'] argument has a certain logical force. … [O]il and natural gas generally exist in a subterranean realm. Therefore, the conveyance of the surface of property without any further description would by necessary implication appear to exclude a conveyance of oil and natural gas. However, as Justice Oliver Wendell Holmes, Jr. once

- 12 -

aptly observed, "The life of the law has not been logic. It has been experience."

May 7, 2015 Opinion and Order

Pursuant to Pennsylvania law, a conveyance of "all surface and right of soil" has been interpreted to include gas and oil rights where no specific exception or reservation severed such rights. *Yuscavage v. Hamlin*, 391 Pa. 13, 15-16, 137 A.2d 242, 243-244 (1958). "The situs of the gas and the methods utilized to extract gas do not support a deviation ... "from the principle, known as the *Dunham Rule*. Such has been a rule of property law "long acquiesced in" within the Commonwealth. *Butler v. Charles Powers Estate ex. rel. Warren*, 65 A.3d 885, 891-892, and 899 (Pa. 2013).

The following portion of the Majority Opinion written by Justice Baer in *Butler* informs us that:

The Dunham Rule is clear, dating back to *Gibson* [*v. Tyson*, 5 Watts 34 (Pa. 1836)], that the common, layperson understanding of what is and is not a mineral is the only acceptable construction of a private deed. Notwithstanding different interpretations proffered by other jurisdictions, the rule in Pennsylvania is that natural gas and oil simply are not minerals because they are not of a metallic nature, as the common person would understand minerals. *Gibson*, 5 Watts at 41-42; see also Dunham, 101 Pa. at 44. The *Highland* [v. *Commonwealth*, 161 A.2d 390 (Pa. 1960)] decision made clear **that the party advocating for the inclusion of natural gas within the deed reservation (here [a]ppellees) bears the burden of pleading and proving by clear and convincing evidence that the intent of the parties who executed the reservation was to include natural gas.** 161 A.2d at 398-99. Critically, however, **such intention may only be shown through parol evidence that indicates the intent of the parties at the time the deed was executed**—in this case, 1881. Id. (emphasis added)

- 13 -

*Butler v. Charles Powers Estate ex rel. Warren*, 620 Pa. 1, 22-23, 65 A.3d 885, 898 (2013).

[Appellants] must plead that the intent of Hugh Hanna in executing his devise, and the intent of his heirs in executing the distribution, was to sever the oil and gas rights to the property. They have not pleaded such facts. Instead, they pleaded a pattern and practice of use over the land by Berdie Wilson and her heirs and assignees. They pleaded that the will and the deed of distribution did not provide for the distribution of oil and gas underlying the property, and this failure to address such a portion of Hugh Hanna's estate evidences an intention to sever these interests. The established case law of the Commonwealth of Pennsylvania does not permit this assumption to be made; instead it requires the opposite. Hugh Hanna's will and the Deed of Distribution demonstrate no intention to sever the oil and gas rights sufficient to overcome the Dunham Rule.

A demurrer does not admit the truth of averments in a complaint that conflict with exhibits. Where any inconsistency exists between the allegations of a complaint and a written instrument ... the latter will prevail. *See Framlau v. County of Delaware*, 223 Pa. Super. 272, 299 A.2d 335, 338 (Pa. Super. 1972).

In an era where the Dunham rule necessarily included oil and gas in the "surface" of a property, Hugh Hanna referred to his property's surface to distinguish it from the coal interests he bequeathed to his grandchildren. See Amended Complaint ¶¶ 33, Exhibit E.

"The general principles regulating the titles to upper and lower estates in the earth's crust are pretty well settled by our own cases. **The ownership of the surface carries with it, if there be no obstacle to the application of the general rule, title downward to the center of the earth and upward indefinitely**." *See Delaware & Hudson Canal Co. v, Hughes*, 183 Pa. 66, 691 38 A. 568,569 (1897) (emphasis added). "It is true that ... severance (of oil and gas rights or the mineral estate) is generally made by deed or other conveyance, **and that until so made the title to the land is regarded as an entirety, including minerals as well as the surface**." *See Hyde v. Rainey*, 223 Pa. 540, 545, 82 a. 781, 783 (1912) (emphasis added). The *Dunham rule* has been "unwavering in its clarity

- 14 -

that, absent the terms "oil" or "natural gas" being included within a reservation for mineral rights within a private deed, oil or natural gas simply are not encompassed within the reservation without clear and convincing parol evidence produced by the proponent of the reservation to the contrary." *Butler v. Charles Powers Estate ex rel. Warren*, 620 Pa. 1, 19-20, 65 A.3d 885, 896 (2013).

[Appellants] allege that the property had existing oil and gas wells that may have been producing oil and gas at the time of Hugh Hanna's death. ¶ 41. They further allege that documents prepared before and after Hugh Hanna's death indicate that the parties assessed the value of the "surface" of the property below that of what would be appropriate to include oil and gas. ¶¶ 42-45. [Appellants] argue under Count II that this indicates that a severance of the oil and gas was likely. However, Exhibit G demonstrates that Berdie Wilson signed and executed a distribution that conveyed to her no interest in the surface of the property at issue. This is fatal to [Appellants'] attempt to rebut the *Dunham Rule's* presumption.[1]

> [1] A demurrer does not admit the truth of averments in a complaint that conflict with exhibits. Where any inconsistency exists between the allegations of a complaint and a written instrument ... the latter will prevail. *See Framlau v. County of Delaware*, 223 Pa. Super. 272, 299 A.2d 335, 338 (Pa. Super. 1972).

Interpreted in this light, the will of Hugh Hanna and the Deed of Distribution indicate an intent to include the oil and gas rights to the property. The Court must defer to the experience of case law. [Appellees'] and Intervenor's preliminary objections to Count II of the Amended Complaint are sustained.

Trial Court Opinion, 12/31/15, at 10-15.

We agree with the trial court's conclusions. Appellants' arguments ignore the reality that the only reservation of mineral rights was for coal; absent a separate reservation, the remaining subsurface rights remained with the surface rights in the property. The property, which included the oil

and gas rights, was conveyed to Appellees' predecessors in interest, and Appellants received no interest in the property. As such, we discern no error of law or abuse of discretion in the trial court sustaining Appellees' preliminary objections in the nature of a demurrer. Accordingly, we affirm the final order entered in this matter on March 16, 2017.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2018

Smith

## IN THE COURT OF COMMON PLEAS OF
## WASHINGTON COUNTY, PENNSYLVANIA
## CIVIL DIVISION

PATRICIA CARTER,
CAROL BETH WILSON,
JOHN ALLEN WILSON AND
ELIZABETH WILSON

PLAINTIFFS

VS.

RICHARD M. FANNING,
DEBRA J. FANNING,
JEFFREY DUTTON,
LISA DUTTON,
LARRY N. CERCIELLO AND
KANDY S. CERCIELLO

DEFENDANTS

AND

RANGE RESOURCES-APPALACHIA, LLC

INTERVENOR/DEFENDANT



2014-5859

## OPINION AND ORDER

Before the court are the summary judgment motions of the defendants. The Plaintiffs[1], Carter and Wilson, filed an action to quiet title with regard to oil and gas lying beneath an approximately 100 acre tract located in Donegal Township,

---

[1] Throughout this opinion the Plaintiffs, Patricia Carter, Carol Beth Wilson, John Allen Wilson and Elizabeth Wilson shall be referred to as the "Carter and Wilson."

Washington County (Hereinafter referred to as the "Hanna Tract"). Carter and Wilson assert ownership of the oil and gas through Berdie Wilson, a daughter of Hugh Hanna. Carter and Wilson contend that prior to death Hugh Hanna gifted "100% of the oil and gas" underlying the Hanna Tract to Berdie Wilson.

**Procedural History**

On September 24, 2014, Carter and Wilson, filed a four (4) count complaint against individual defendants Fanning, Dutton and Cerciello. The Complaint requested that the Court quiet Defendants Fanning, Dutton and Cerciello's title either completely or by "one-half" in certain real property. The Complaint also sets forth claims of unjust enrichment and slander of title. Carter and Wilson contended that they succeeded to the title of Berdie Wilson, daughter of Hugh Hanna, a prior record owner of the Hanna Tract. Carter and Wilson advanced that Hugh Hanna made a parol gift of the oil and gas estate to Berdie Wilson. On November 26, 2014 this court granted Range's petition to intervene as a party defendant.

On November 24, 2014, Defendants Fanning, Dutton and Cerciello filed preliminary objections. On December 3, 2014 Range filed separate preliminary objections. Defendants Fanning, Dutton and Cerciello alleged that the recorded "chain of title" from 1825 to 2014 does not indicate that a severance of oil and gas

occurred. By virtue of three (3) separately recorded deeds and their record chain of title, Defendants Fanning, Dutton and Cerciello claim exclusive ownership of all right, title and interest in the oil and gas to the Hanna Tract. (See Paragraphs 3, 4 and 5 Fanning-Dutton Cerciello Preliminary Objections to the Original Complaint). Defendant Range filed preliminary objections that included a demurrer and a claim of lack of specificity.

On May 7, 2015 this court issued an opinion and order sustaining the defendants' preliminary objections. The court did not dismiss the action. Instead, Carter and Wilson were given twenty (20) days to file an amended complaint.

On May 27, 2015 Carter and Wilson filed an Amended Complaint. In the Amended Complaint, Carter and Wilson reiterated their previous allegation that as the heirs of Berdie Wilson's Estate they owned "100%" of the oil and gas underlying the Hanna Tract. Specifically, Carter and Wilson asserted that Hugh Hanna "gifted" the oil and gas estate to Berdie Wilson. (See Amended Complaint ¶ 57 and 58). Carter and Wilson did not plead the existence of a writing that specifically provided for the gift. Instead, Carter and Wilson alleged that circumstantial evidence demonstrated the existence of a parol gift. (See Amended Complaint ¶ 11-56) In the alternative, Carter and Wilson alleged that the "Will of Hugh Hanna severed the surface of the farm and the coal of the Property(Hanna Tract) from the oil and gas." (See Amended Complaint ¶ 82) Carter and Wilson

further alleged that the interests in the oil and gas passed "pursuant to the laws of intestacy." (See Amended Complain ¶ 83) On that basis, Carter and Wilson assert they are the heirs of Berdie Wilson and entitled to a one-half interest in the oil and gas lying beneath the Property. (See Amended Complaint ¶ 83-85). The Defendants filed preliminary objections to the Amended Complaint.[2]

On December 31, 2015, this court issued a memorandum and order sustaining objections to Count II of the Amended Complaint and overruling all other objections. [3] With regard to the dismissal of Count II of the Amended Complaint, this court determined that the Carter and Wilson insufficiently pleaded the severance of the oil and gas estate from the surface of the "Property." More specifically, this court sustained preliminary objections to Count II of the original complaint and Count II of the amended complaint because neither the Hugh Hanna Will nor the later Deed of Distribution contained a reservation of oil and gas for the Hanna Tract. In Count II, Carter and Wilson pleaded "in the alternative." (See Amended Complaint ¶ 80) Carter and Wilson alleged that Hugh Hanna's Will did not specifically provide for the distribution of the oil and gas estate and contained

---

[2] On June 12, 2015, Defendants Fanning, Dutton and Cerciello filed objections which raised a demurrer to all 4 counts of the Amended Complaint; sought a more specific pleading with regard to the time, date and place of the alleged parol gift of oil and gas interests and moved to strike all counts of the complaint. On June 16, 2015 Defendant Range filed 4 objections to the Amended Complaint. In each, Range asserted a demurrer to each of the counts of the Amended Complaint.
[3] By Amended Order of January 6, 2016 this court confirmed that it did not grant Carter and Wilson further leave to amend their complaint.

no residuary clause. On that basis, Carter and Wilson advanced that the oil and gas estate passed by the laws of intestacy and they had succeeded to Berdie Wilson's one half interest.

Relying on the Dunham Rule and the decision of Butler v. Powers Estate ex. rel., 65 A.3d 885, 896 (2013), this court could not overlook the significance of the absence of an oil and gas severance provision in the Deed of Distribution. Pursuant to the Dunham Rule, the express language of the Deed of Distribution showed that Berdie Wilson had conveyed her interests in her late father's estate to include any inheritable interest in the Hanna Tract without a reservation of the oil and gas estate. Thus, Carter and Wilson could not rest their claim upon the laws of intestacy but would have to prove that the rights to the oil and gas estate were transferred to Berdie Wilson prior to Hugh Hanna's death. Having previously afforded Carter and Wilson the opportunity to amend the original complaint for the same deficiency, this court found that a further amendment would not cure a "fatal defect" in Carter and Wilson's pleading of Count II.[4]

---

[4] The parties when describing this court's decision have consistently restricted the ruling to a determination of the intent of Hugh Hanna's Will. Such an interpretation is not entirely accurate. The following passages from this court's last opinion determining preliminary objections provided:

> The Plaintiffs must plead that the intent of Hugh Hanna in executing his devise, and the intent of his heirs in executing the distribution, was to sever the oil and gas rights to the property. They have not pleaded such facts. Instead, they pleaded a pattern and practice of use over the land by Berdie Wilson and her heirs

The parties conducted discovery with regard to Counts I, III and IV of the Amended Complaint. Those counts include an action to quiet title (Count I), a claim of unjust enrichment seeking the imposition of a constructive trust and an accounting (Count II), and an action seeking damages for slander of title (Count IV).

Following discovery, both Defendant-Range Resources and Defendants-Fanning and Cerciello filed motions for summary judgment.[5]  Fanning and Cerciello asserted in their motion that "The paucity of evidence to support the Plaintiffs' claim is alarming." (See Fanning and Cerciello Brief in Support p. 7)  In summary, Fanning and Cerciello contend that no documentation or direct evidence supports Carter and Wilson's claim that Hugh Hanna, prior to death, completed a parol inter vivos gift of oil and gas interests to Berdie Wilson.  To the contrary, Fanning and Cerciello point out that the Property was encumbered by an oil and

---

and assignees. They pleaded that the will and the deed of distribution did not provide for the distribution of oil and gas underlying the property, and this failure to address such a portion of Hugh Hanna's estate evidences an intention to sever these interests. The established case law of the Commonwealth of Pennsylvania does not permit this assumption to be made; instead it requires the opposite. Hugh Hanna's will and the Deed of Distribution demonstrate no intention to sever the oil and gas rights sufficient to overcome the Dunham Rule.

(See Memorandum Opinion 12/31/2015)

[5] Defendant Range Resources filed its motion on June 24, 2016.  Defendants Fanning and Cerciello filed their motion for summary judgment on June 29, 2016. Defendants Jeffrey Dutton and Lisa Dutton did not file a motion for summary judgment.  The Dutton Defendants requested that counsel representing Fanning and Cerciello withdraw from representation of the Duttons who wished to proceed *pro se.*  Such withdraw of counsel was granted on April 4, 2016.



gas lease prior to Hugh Hanna's ownership. Identified as the "Gourley Lease," such lease was according to Fanning and Cerciello subject to numerous assignments of record from 1889 to 1945. Such assignments did not include Berdie Wilson or her late husband Alex Wilson. Fanning and Cerciello charge that Carter and Wilson's claims are premised upon "unsupported inferences, conjecture and assumptions" that lack documentation memorializing, or the testimony of a living witness to the alleged oral gift. Fanning and Cerciello assert that the Statute of Frauds and the Pennsylvania Recording Act support the granting of summary judgment.



In response, Carter and Wilson claim that "The evidence garnered, when considered as a whole" demonstrates that Hugh Hanna made a gift of the oil and gas lying beneath the Hanna Tract to his daughter, Berdie Wilson. Specifically, Carter and Wilson allege that Berdie Wilson asserted dominion and control over the oil and gas during Hugh Hanna's lifetime. On that basis, Carter and Wilson proffer that "Berdie Wilson's actions with respect to the oil and gas underlying the Property evidenced her father's intention to make an immediate gift of the oil and gas to her." (See Plaintiffs' Omnibus Brief p. 4) Further, Carter and Wilson advance that the oil and gas lying beneath the property was not an asset of the estate of Hugh Hanna and was not "provided for" in Hugh Hanna's Will. (Carter and Wilson Omnibus Brief p. 8) Carter and Wilson claim they are the



descendants of Berdie Wilson and have "100% ownership over " the oil and gas underlying the Property. Carter and Wilson assert that the defendants' summary judgment motions are nothing more than twin invitations for the court to weigh evidence. On this basis, Carter and Wilson contend that material issues of fact exist that a finder of fact at trial must determine.

## Summary Judgment

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). An entry of



summary judgment may be granted only in cases where the right is clear and free from doubt. Musser v. Vilsmeier Auction Co., Inc., 522 Pa. 367, 369, 562 A.2d 279, 280 (1989).

The moving party has the burden of proving the nonexistence of any genuine issue of material fact. Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 202-204, 412 A.2d 466, 468-69 (1979). The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Davis v. Pennzoil



Co., 438 Pa. 194, 264 A.2d 597 (1970) as cited in Marks v. Tasman, 527 Pa. 132, 134-35, 589 A.2d 205, 206 (1991).

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. JP Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258, 1261-62 (Pa.Super.2013) (quoting Murphy v. Duquesne Univ. of the Holy Ghost, 565 Pa. 571, 777 A.2d 418, 429 (2001)). Where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Thompson v. Ginkel, 2014 PA Super 125, 95 A.3d 900, 904 (Pa. Super. 2014).



The ultimate inquiry in deciding a motion for summary judgment is whether the admissible evidence in the record, considered in the light most favorable to the respondent to the motion, fails to establish a prima facie case. Johnson v. Harris, 419 Pa.Super. 541, 548-49, 615 A.2d 771, 775 (1992) citing Liles v. Balmer, 389 Pa.Super. at 454, 567 A.2d at 692 (1989). The court below, nevertheless, could give weight to the affidavit only to the extent that it set forth matter that would be admissible into evidence. McFadden v. Am. Oil Co., 215 Pa.Super. 44, 50, 257

A.2d 283, 287 (1969). This principle is also set forth in Pa.R.C.P. 1035.4 which directs:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein. Verified or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Pa.R.C.P. No. 1035.4.

The non-moving party is entitled to the benefit of all reasonable inferences. Elder v. Nationwide Ins. Co., 410 Pa.Super. 290, 294, 599 A.2d 996, 998 (1991) citing Samarin v. GAF Corporation, 391 Pa.Super. 340, 571 A.2d 398 (1989).

In doing so, a trial court appropriately disregards hearsay or inadmissible evidence when determining a motion for summary judgment. In Liles, the non-moving party attempted to prove the occurrence of an accident through the admission of a police report and hospital records. The following passage from Liles is instructive in this regard:

> It is readily apparent that there is a dispute of fact in this case. The real issue is whether the plaintiff can produce evidence sufficient to establish prima facie that the accident occurred as she has alleged. We agree with the trial court that plaintiff has failed to demonstrate that the police accident report and the hospital records are admissible as business records to prove the manner in which the accident occurred. To satisfy the requirements of the Uniform Business

Records in Evidence Act, 42 Pa.C.S. § 6108(b), a report must: (1) have been made at or near the time of the events it purports to relate; (2) be generated as a regular practice of the business; and (3) be trustworthy as to the source of information or the method or circumstances of preparation. Ganster v. Western Pennsylvania Water Co., 349 Pa.Super. 561, 569, 504 A.2d 186, 189-190 (1985). Here, the plaintiff has not shown that the sources of the information appearing in the police and hospital records were trustworthy. See: Hreha v. Benscoter, 381 Pa.Super. 556, 565-567, 554 A.2d 525, 529-530 (1989).

We also agree with the trial court that plaintiff, contrary to her assertion, cannot prove her cause of action by showing that on prior occasions the dog was unrestrained and chased passing vehicles. Evidence of prior lack of restraint which permitted the dog to run into the street is not relevant to prove a negligent lack of control of the dog at the time of the accident. See, e.g.: Levant v. L. Wasserman Co., Inc., 445 Pa. 380, 382-383, 284 A.2d 794, 796 (1971); Roney v. Clearfield Co. Grange Ins. Co., 332 Pa. 447, 449, 3 A.2d 365, 366 (1939); Baumeister v. Baugh & Sons Co., 142 Pa.Super. 346, 353, 16 A.2d 424, 427 (1940). Appellant, moreover, is unable to show that the Balmers habitually allowed their dog to run free to chase passing vehicles. Whether evidence of habit "is admissible to show what occurred in a specific instance depends on the 'invariable regularity' of the usage or habit." Baldridge v. Matthews, 378 Pa. 566, 570, 106 A.2d 809, 811 (1954); Aurand v. Universal Carloading & Distributing Co., 131 Pa.Super. 502, 507, 200 A. 285, 287 (1938); Packel and Poulin, Pennsylvania Evidence § 406, p. 186 (1987). Here there is no evidence that the dog habitually was allowed to run free to chase passing vehicles.

Liles v. Balmer, 389 Pa.Super. 451, 455–56, 567 A.2d 691, 692–93 (1989)

More recently, the Superior Court, in Rosenberry v. Evans, 48 A.3d 1255, 1264 (Pa. Super. 2012), held that inadmissible hearsay could not be used to defeat a motion for summary judgment. The Superior Court explained:

Mother testified that after her son was injured, she heard rumors from Dale Cannon that the dog had previously attacked and killed a poodle. Deposition of Rhonda Rosenberry, 10/12/10, at 21–22. She contends that the fact that Landlord lived in the community should permit the inference that he also heard the rumors and, thus, knew the dog had violent propensities.

Landlord counters that such testimony constitutes inadmissible hearsay and cannot be used to defeat summary judgment. Samarin v. GAF Corp., 391 Pa.Super. 340, 571 A.2d 398, 402 (1989). We agree. Mother had no personal knowledge of the facts underlying the rumors, and **we will not rely upon inadmissible hearsay to find a genuine issue of material fact.** If witnesses existed who could have substantiated the truth of the rumor, it was Mother's burden to establish those facts on the record.

Rosenberry v. Evans, 2012 PA Super 91, 48 A.3d 1255, 1264 (Pa. Super. 2012).

The "quantum of evidentiary facts which must be adduced to preclude summary judgment is not the same as required ... at trial...." See, McFadden v. American Oil Company, 215 Pa.Super. 44, 257 A.2d 283 (1969) For instance, as explained by the Superior Court in Elder v. Nationwide Ins. Co., 410 Pa.Super. 290, 599 A.2d 996 (1991), evidence presented by a non-moving party to establish fraud need not rise to a level of clear and convincing, although that is the standard to be applied at trial. *However, the evidence must reasonably support the inference sought to be drawn therefrom in order that the non-moving party may resist a motion for summary judgment.* Where the facts presented in a case "cannot be said to rise to such a level" summary judgment is appropriate. Elder v. Nationwide Ins. Co., 410 Pa.Super. 290, 299, 599 A.2d 996, 1000 (1991).

Later, the Superior Court in InfoSAGE, Inc. v. Mellon Ventures, L.P., 896 A.2d 616 (Pa. Super. 2006) held that the non-moving party must adduce evidence of such a quality that a jury could return a favorable verdict to the non-moving party on the issue or issues challenged by a summary judgment request. In support of their ruling, the Superior Court cited the following passage from Ertel v. Patriot-News Co., 544 Pa. 93, 100-02, 674 A.2d 1038, 1042 (1996):

> Allowing non-moving parties to avoid summary judgment where they have no evidence to support an issue on which they bear the burden of proof runs contrary to the spirit of [Pennsylvania Rules of Civil Procedure 1035.1-.5]. We have stated that the 'mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial.' We have a summary judgment rule in this Commonwealth in order to dispense with a trial of a case (or, in some matters, issues in a case) where the party lacks the beginnings of evidence to establish or contest a material issue.... Forcing parties to go to trial on a meritless claim under the guise of effectuating the summary judgment rule is a perversion of that rule.
> * * * * * *
> Thus, we hold that a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor.

InfoSAGE, Inc. v. Mellon Ventures, L.P., 896 A.2d 616, 625–26 (Pa. Super. 2006).

The evidence relied upon by the non-moving party need not be direct evidence, but may be circumstantial evidence and the inferences reasonably deducible therefrom. Cade v. McDanel, 451 Pa.Super. 368, 679 A.2d 1266, 1271 (1996). "Such circumstantial evidence and its reasonable inferences 'must be



13 | P a g e

adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith.' It is also well-settled that a court reviewing the propriety of a summary judgment motion must be mindful that a jury may not be permitted to reach its verdict on the basis of speculation or conjecture." InfoSAGE, Inc. v. Mellon Ventures, L.P., 896 A.2d 616, 626 (Pa. Super. 2006) (Internal citations omitted)

In light of these principles, this court has examined the pleadings, deposition transcripts, Answers to Interrogatories, Responses to Request for Admission and numerous attached documents all submitted by the parties.

## CHAIN OF TITLE

Both parties have submitted numerous recorded documents from the chain of title for the Hanna Tract. Pa.R.E. 803 (14) provides recorded property documents are admissible as an exception to the hearsay rule as follows:

> The record of a document purporting to establish or affect an interest in property, as proof of the content of the original recorded document and its execution and delivery by each person by whom it purports to have been executed, if the record of a public office and an applicable statute authorizes the recording of documents of that kind in that office.

The documents submitted which establish the chain of title for the Hanna Tract and for the properties later purchased by the Plaintiffs were in all instances documents recorded in either the Recorder of Deeds Office or admitted to probate in the Register of Wills Office of Washington County. As such, those documents are admissible pursuant to Pa.R.E. 803(14). Consideration of those documents to determine the present motion is appropriate and reveals the following.

On May 3, 1889 John and Mary Gourley, then the owners of what later became known as the Hanna Tract, entered into a lease with W.E. Brooks and J.B. Duffy "for the sole and only purpose of drilling...for petroleum oil and gas." (See Range App. Ex. 6, DBV 150 page 309-310) On February 18, 1894 Brooks and Duffy sold and assigned this lease to Victor Oil Company. (See Range App. Ex. 7, DBV 201 page 119). On April 1, 1901, Victor Oil sold the lease back to J.B. Duffy for the sum of $5,000.00. In this recorded instrument, the parties recited that the Victor Oil Company "has drilled and is now operating two oil wells *on said land.*" This transfer to Mr. Duffy included the "lease and all rights thereunder, together with *said two wells.*" (See Range App. Ex. 7, DBV 250 Page 622).

On April 9, 1901 J.B. Duffy for the sum of $8,950.00 sold and assigned all of his right, title and interest to the oil and gas lease for what would become the

Hanna Tract. (See Range App. Ex. 7, DBV 252, page 88 "Second Parcel"). This

transfer to John Preston and W.C. McBride included:

> ...all the oil wells, carpenter's rigs, engines, boilers, tubing, casing, steam, gas and water lines, tankage fittings, connections, tools and appurtenances *now situate upon said leasehold(s)* ...

On April 10, 1901, John and Mary Gourley entered into a modification of lease

with Preston and McBride. Such modification contemplated the drilling of

additional wells and included a graduated royalty schedule based upon daily

production of oil. (See Range App. Ex. 7, DBV 250 page 632)

On February 9, 1903 Hugh Hanna purchased the 100 acre tract "together

with all...the reversions and remainders; rents, issues and profits." (See Ex. A

Amended Complaint). This deed contained no clause which mentioned the oil and

gas lease held by Preston and McBride. The deed included no clause excepting

and reserving any mineral, coal, oil and or natural gas rights.

On January 31, 1905 John Preston assigned all of his right, title and interest

to two (2) "oil bearing farms" known as the Lindly and Gourley farms. By the

assignment W.C. McBride received all of Preston's interest. (See Range App. Ex.

7, DBV 341 page 154) Within a decade, on March 20, 1914, W.C. McBride and

his wife Katherine assigned all of their right, title and interest to the Gourley lease



to the Delk Investment Corporation of Missouri. (See Range App. Ex. 7, DBV 688 page 555).[6]

On October 21, 1923 Hugh Hanna died. (See Amended Complaint Ex. E). Mr. Hanna died testate. No evidence has been provided of any written assignment, deed or other transfer of the oil and gas rights Hugh Hanna obtained from the Gourleys to his daughter Berdie Wilson. Hugh Hanna's Last Will and Testament, though colorfully written, contains no specific mention of any prior gift of the oil and gas rights to Berdie Wilson. By his will, Hugh Hanna bequeathed to his surviving spouse, Elizabeth, and his son Howard Thomas E. Hanna:

> ...the surface of the farm on which I reside, share and share alike with all its outbuildings, including the mansion house, wash house, old brick house, barn, sheep shed, etc., which I value at $32,000, upon the following conditions, that they are to pay Francis Wilson the sum of $1,000.00 within one year of my death. And if they are not satisfied with this, they may apply to the pole cat hunters of McConnells Mills, who visited my farm in Chartiers Twp. from 125 to 150 times under the cover of darkness, committing all kinds of depradations, putting pole cats in my wells, and giving me a dose of croton oil, and cutting my harness to pieces, and finally, but not least, burning my sheep shed and its contents, which I valued at $4,000.00

(See Amended Complaint Ex. E). In her deposition, plaintiff Carol Wilson contended that this bequest to was Hugh Hanna's "way of saying" that he had already gifted the oil and gas to Berdie Wilson. (See Range App. Ex. 5 p. 59-60

---

[6] Though this assignment was executed by the McBride's on March 20, 1914, the assignment was not recorded until June 6, 1945. The assignment recited not only property in Washington County, Pennsylvania but also for leaseholds in West Virginia, Ohio, Missouri and Illinois.

and 63) In the same document, Hugh Hanna bequeathed to Berdie Wilson as follows:

> ...12 shares of "bank stock" in the Citizens Trust Co. of Canonsburg and all the money I have in said Citizen's Trust Co.'s Bank, in Canonsburg. I also give to Berdie H. Wilson, my daughter all the government bonds amounting to $1500.00 in the lock box of Alexander Wilson in the Claysville National Bank, and all cash that I have in the Claysville National Bank at the time of my death.

Id. No specific mention of oil and gas interests is present in the Will.

On February 22, 1924 Elizabeth Hanna filed an "Election To Take Against Will." She did so because Hugh Hanna did not account for the payment of creditors in his Will. (See Amended Complaint, Exs. H and I)

On June 30, 1926 Elizabeth Hanna, Hugh Hanna's widow, Howard T.E. Hanna, her son, Berdie Wilson, her daughter and George B. Lyle, the Guardian of the estates of minors Ruth Wilson and Francis Wilson, executed and recorded a Deed of Distribution regarding the assets of the Hugh Hanna Estate. In describing its purpose the Deed of Distribution recited "...in order to vest the title to said real estate in accordance with said "Exhibit A", this instrument is executed acknowledged and delivered."

According to this "Deed of Distribution" Hugh Hanna's interests in real estate were granted and conveyed to Elizabeth Hanna, Howard T.E. Hanna, Francis Wilson and Ruth Wilson. Elizabeth Hanna and Howard T. E. Hanna each received a one-half (1/2) interest in the Hanna Tract described as the "... surface of

the farm on which I reside, share and alike, with all its outbuildings, including the mansion house, wash house, old brick house, barn sheep shed, etc...." Francis Wilson, Ruth Wilson and Elizabeth Hanna each received a one-third (1/3) interest in the coal underlying the Hanna Tract and to a Pittsburgh vein of coal underlying a 61 acre tract of land in Buffalo Township Washington County. (See Amended Complaint Ex. G, DBV 541 at Pg. 325)

According to the schedule of distribution, labeled "Exhibit A", Berdie Wilson received from her father's estate the share having the greatest value, being $8,603.86. Such share *did not include any interest in real estate.* Such share did include 12 shares of stock in the Citizens Trust Co. valued at $3600.00 and a Savings Account in the same bank having a value of $ 5,151.12. (See Amended Complaint Ex. G).

Elizabeth Hanna died testate on November 10, 1927. (See Amended Complaint Exhibit I) According to the Will of Elizabeth Hanna, all of her property passed to Howard T.E. Hanna, her son. (See Amended Complaint Exhibit H)

The Defendants, Fanning, Dutton and Cerciello, each now own a portion of the Hanna Tract which Howard T.E. Hanna inherited from his father, Hugh, and mother, Elizabeth. On November 29, 1932 Howard T.E. Hanna sold 13.29 acres of Hanna Tract to Francis H. Wilson. The recorded deed for this conveyance recited the following:



The above described tract of 13.2949 acres hereby conveyed is a part of a larger tract of land containing 101 acres, more or less, which was conveyed to Hugh Hanna by Mary J. Gourley et.al.by deed dated February 9, 1903, and recorded in Deed Book No. 295, page 192.

The said Hugh Hanna died on October 21, 1923 leaving a will in which he specifically devised said larger tract (of which the land hereby conveyed is a part) to certain devisees in said will named. For further information, reference is made to said will, as the same appears of record in Will Book No. 30, page 453. On June 29, 1926, by an agreement of that date, which is recorded in Deed Book No. 531, page 324, the devisees and legatees under said will made an adjustment of their respective interests in the real and personal estate of the testator, whereby, inter alia, **the title to said recited larger tract (excepting the underlying coal) became vested as follows**: An undivided one-half thereof in Elizabeth A. Hanna, the testator's widow, and the other undivided one-half in said Howard T.E. Hanna."

(See Amended Complaint Ex. I) (Emphasis Added). This recital made no mention

of the oil and gas estate having been previously severed from Hugh Hanna Tract.

On April 25, 1949 Howard T.E. Hanna sold the remaining 87.6175 acres to Robert

and Frances Loughman. This conveyance included a similar recital concerning the

distribution of the Estate of Hugh Hanna to that set forth in deed to Francis Wilson

with the following additional language:

...The value of the entire estate, real and personal, was submitted to the Orphans' Court of Washington County, at No. 11 August Term, 1924, A.A, for distribution ; **the effect of which agreement was to construe the word "surface" in the devise to Howard T.E. Hanna on said will, as the land in opposition to the coal and including all else.**

(See Amended Complaint Ex. J, DBV 756, page 25-26) (Emphasis Added) . The Defendants Fanning, Dutton and Cerciello trace title to their respective properties back to this conveyance from Howard T.E. Hanna to the Loughmans.

**Quiet Title**

Carter and Wilson have filed a quiet title action to dispute the validity of the Defendants' interests in the oil and gas estates on the Fanning, Dutton and Cerciello properties. The scope of permissible actions to Quiet Title is found at Pa.R.C.P. No. 1061which provides:

(a) Except as otherwise provided in this chapter, the procedure in the action to quiet title from the commencement to the entry of judgment shall be in accordance with the rules relating to a civil action.

(b) The action may be brought

(1) to compel an adverse party to commence an action of ejectment;
(2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;
(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; or
(4) to obtain possession of land sold at a judicial or tax sale.

Carter and Wilson contend that they have 100 % ownership of the oil and gas estate for properties derived from the Hanna Tract. Carter and Wilson assert Hugh Hanna, by means of a parol inter vivos gift, gave title to Berdie Wilson. For these reasons, Carter and Wilson seek a decree that the Defendants have "no estate,

right, title, lien or interest in or to" the oil and gas estate's lying beneath the Fanning, Dutton and Cerciello properties.

The burden of proof in an action to quiet title is on the plaintiff. <u>Cox's, Inc. v. Snodgrass</u>, 372 Pa. 148, 152, 92 A.2d 540, 541-542 (1952); <u>Grace Building Co., Inc. v. Parchinski</u>, 78 Pa.Cmwlth. 187, 191, 467 A.2d 94, 96 (1983). In such an action, the plaintiff can recover only on the strength of his or her own title and not upon the weakness of the defendant's title. <u>Albert v. Lehigh Coal & Navigation</u> <i>Co.</i>, 431 Pa. 600, 607, 246 A.2d 840, 843 (1968); <u>Carratelli v. Castrodale</u>, 185 Pa.Super. 426, 429, 137 A.2d 805, 806 (1958) as cited in <u>Montrenes v. Montrenes</u>, 355 Pa.Super. 403, 405–06, 513 A.2d 983, 984 (1986).

In this case, Carter and Wilson are unable to point to any deed or other document that conveyed the oil and gas lying beneath the Hanna Tract to Berdie Wilson. Instead, Carter and Wilson have rested the strength of their title upon the occurrence of an oral gift of land that occurred approximately 100 years ago. To meet their burden in this action, Carter and Wilson must demonstrate that Hugh Hanna made a parol inter vivos gift of the oil and gas estate to Berdie Wilson.

## PAROL INTER VIVOS GIFT OF AN INTEREST IN LAND

In order to effectuate an <i>inter vivos</i> gift there must be evidence of an intention to make a gift and a <i>delivery</i>, actual or constructive, of a nature sufficient



not only to *divest the donor* of all dominion over the property but also *invest the donee* with complete control over the subject-matter of the gift. In re Pyewell's Estate, 334 Pa. 154, 5 A.2d 123; In re Rynier's Estate, 347 Pa. 471, 32 A.2d 736. It is the claimant's burden to prove by *clear and satisfactory evidence* that a gift in fact was made. Sullivan v. Hess, 241 Pa. 407, 88 A. 544; In re Kata's Estate, 363 Pa. 539, 70 A.2d 351; Lochinger v. Hanlon, 348 Pa. 29, 39, 33 A.2d 1. Cf. In re Campbell's Estate, 61 Pa.Dist. & Co. 19. (Emphasis Added).

**No Evidence of a Declaration of Gift**

Carter and Wilson argue that "subsequent acts as well as the facts and circumstances surrounding the gift" establish Hugh Hanna's donative intent to make an immediate gift of oil and gas to Berdie Wilson. Carter and Wilson did not provide any evidence of an actual declaration of a gift by Hugh Hanna to Berdie Wilson.

The court has reviewed and considered each of the cases cited in Carter and Wilson's Omnibus Brief concerning donative intent. The cases cited by Carter and Wilson do not support their extrapolation of long-standing legal principles. In the cases cited by Carter and Wilson, either by a writing such as a signature card or other written instrument, the essentials of a gift inter vivos were proven.



For instance, Carter and Wilson cited the case of <u>Ashley v. Ashley</u>, 393 A.2d 637, 639 (Pa. 1978) for the purposes of defining donative intent. Though correctly citing the black letter principle that such intent is an intention to make an immediate gift and transfer ownership, Carter and Wilson neglected to discuss the facts of <u>Ashley</u>. In <u>Ashley</u>, evidence of both a donor's oral and written representations regarding the gift of shares of stock to his wife was offered. No such evidence regarding Hugh Hanna's oral and written representations was offered by Carter and Wilson.

Carter and Wilson also cited <u>In re Secary's Estate</u>, 407 Pa. 162, 166–67, 180 A.2d 572, 574 (1962) for the principle that parol evidence is admissible to prove donative intent. The difficulty in applying this principle is that Carter and Wilson do not offer parol evidence of a declaration by Hugh Hanna of a gift to Berdie Wilson. Further, Carter and Wilson broadly paraphrase a holding that dealt with an inter vivos gift of the contents of a safety deposit box where the alleged donor and donee executed a written lease. The Supreme Court in <u>Secary</u> explained:

> Where an owner of a safe deposit box and his donee execute a contract or lease which recites that the property therein is the joint property of the lessees, with right of survivorship, and that the lessees acknowledge the receipt of two keys to said box-this creates a prima facie case of a valid inter vivos gift of a joint interest (with right of survivorship) in said property. The majority view appears to be that parol evidence is admissible (a) to prove an intention, or lack of intention, to make a gift as well as (b) delivery or failure of delivery,

because the instrument is considered to be incomplete or (sometimes) equivocal. Cf. Furjanick's Estate, 375 Pa. 484, 100 A.2d 85. However, it is established that the parol evidence which is necessary to disprove such gift must be clear, precise and [convincing]. Cf. Furjanick's Estate, 375 Pa. 484, 100 A.2d 85, supra; In re Fell's Estate, 369 Pa. 597, 87 A.2d 310, supra; Mader v. Stemler, 319 Pa. 374, 179 A. 719, supra; Dempsey v. First National Bank of Scranton, 359 Pa. 177, 58 A.2d 14, supra.

In re Secary's Estate, 407 Pa. 162, 166–67, 180 A.2d 572, 574 (1962). In response to the motion for summary judgment, Carter and Wilson have not provided evidence that Hugh Hanna and Berdie Wilson executed a contract or a lease that recited their joint ownership of the oil and gas estate lying beneath the Property.

Carter and Wilson correctly state that donative intent may be more readily found in cases involving gifts of *personal property* from parents to children. Aside from being cases that involve personal as opposed to real property, such cases are also factually different from this dispute.

For example, Carter and Wilson cite McClements v. McClements, 191 A.2d 814, 816 (Pa. 1963) which is distinguishable on its facts. McClements involved a dispute over ownership of shares of corporate stock between the widow and the sons of a decedent. Ownership of the disputed shares had been transferred to the sons according to the books of the corporation. Citing its earlier decision in Brightbill v. Boeshore, the Supreme Court reiterated that "under certain circumstances, the transfer of the registration of stock ownership on the books of



the corporation in itself constitutes a legal and sufficient delivery." <u>McClements v. McClements</u>, 411 Pa. 257, 261, 191 A.2d 814, 815-16 (1963).

In this instance, no such documentary proof of a transfer of ownership of the oil and gas estate of the "Hugh Hanna Tract" has been provided. In regards to matters involving real estate interests, the transfer of such ownership rights is recorded in the Recorder of Deeds Office. Conspicuously absent from the evidence Carter and Wilson have asked this court to consider are any recorded documents, to include memorandums, which establish the alleged gift of an oil and gas estate to Berdie Wilson. (See Range App. Ex. 5, p. 213 lines 7-14)

The quantum of evidence necessary to circumstantially prove an oral inter vivos gift is more than suspicion and conjecture. For instance in <u>Wagner</u>, the Supreme Court found significant actions the donor had taken in and around a specific date. The <u>Wagner</u> Court explained:

> Accepting as true, as did the trial court, the testimony of Mr. Aston, Eugene, Jr., and Marjorie, we are satisfied that the record supports a finding that appellant made or caused to be made delivery by gift to three of his children of the entire outstanding capital stock of the Realty Corporation. When on November 27, 1970, Aston's secretary, pursuant to appellant's instructions, recorded on the books of the corporation the issuance of shares to the three children, no share certificates had yet been issued. At the same time that this recording was made, blank share certificates were given, again with appellant's consent, to Wagner, Jr., and Marjorie for their signatures as officers of the corporation. Delivery was thereby made of whatever ownership rights Mr. Wagner may have then held in the corporation; he had done all

that was possible to put the corporation beyond his control.[9] That being so, it is irrelevant that the share certificates were thereafter kept by appellant in his office. A gift having been once completed by delivery, return of the subject matter to the donor will not of itself nagate the transaction. Brown, Personal Property s 39 at 92-93 (1955); see also Thompson v. Curwensville Water Co., 400 Pa. 380, 162 A.2d 198 (1960).

Wagner v. Wagner, 466 Pa. 532, 539–41, 353 A.2d 819, 823 (1976) (Emphasis Added). Unlike Wagner, Carter and Wilson have offered no evidence that Hugh Hanna gave instructions that title documents for the oil and gas estate be prepared and given to Berdie Wilson. Carter and Wilson offered no evidence that Hugh Hanna communicated in any manner with any person his intention to transfer his oil and gas rights to Berdie Wilson.

Lastly, Carter and Wilson also cited Brightbill v. Boeshore, 385 Pa. 69, 122 A.2d 38 (1956). Brightbill was a dispute over the ownership of 670 shares of stock in a family owned business between a surviving spouse and her step-daughter. Prior to death, Miles Brightbill executed a written property settlement agreement with his first wife which provided for the delivery of 370 shares of stock to Mr. Brightbill's daughter, Kathryn Boeshore. Later, Mr. Brightbill assigned his remaining 670 shares in the family business to Ms. Boeshore. Ms. Boeshore took possession of the stock certificates for the 670 shares. Nonetheless, Mr. Brightbill for the remainder of his life received the dividends for the 670 shares, paid taxes on those dividends, and voted the shares of stock at corporate meetings.

27 | P a g e



Additionally, the corporate records did not indicate a change in the ownership of the stock had occurred, corporate tax returns continued to indicate Mr. Brighbill owned the stock and corporate by-laws provided that a transfer of all the stock was to be considered a resignation. Brightbill v. Boeshore, 385 Pa. 69, 76, 122 A.2d 38, 42 (1956). The Supreme Court upheld the lower court's ruling that a valid gift of the 670 shares to Boeshore had occurred. The Court reiterated a long-standing principle that:

> 'A gift inter vivos of stock, when once made, cannot be revoked or recalled by the donor without the consent of the donee, nor can the subsequent acts of the donor to which the donee is not a party and to which he does not consent, affect his title, although, of course, the donee may return the stock, thus releasing any right of ownership.



Brightbill v. Boeshore, 385 Pa. 69, 78–79, 122 A.2d 38, 43 (1956).

Unlike Brightbill, no evidence was presented of Hugh Hanna delivering an unrecorded deed, lease or other writing that transferred his oil and gas rights to Berdie Wilson. To the contrary, Carter and Wilson maintain the gift was an oral one.

## Circumstantial Evidence Concerning Oral Gift

The requirements for the creation of a valid parol gift of land are "well established." Fuisz v. Fuisz, 527 Pa. 348, 352–53, 591 A.2d 1047, 1049 (1991). In Fuisz, the Court detailed the following requirements: 1.) evidence of the gift must be direct, positive, express, and unambiguous; 2.) possession of the land must be

28 | P a g e

taken at the time or immediately after the gift is made, and such possession must be exclusive, open, notorious, adverse, and continuous; and 3.) the donee must make valuable improvements on the property for which compensation in damages would be inadequate.[7] In Fuisz, Chief Justice Flaherty further explained:

> Thus, *Yarnall* clearly established that the elements of a parol gift of land must be established by evidence which is direct, positive, express, and unambiguous. Underlying this requirement is a view that delivery of a deed, as is generally necessary under the Statute of Frauds, 33 P.S. § 1, is the normal and proper means for conveying title to real property. Only where it is abundantly clear, leaving nothing to speculation, that a parol gift has occurred does *Yarnall* permit recognition of the gift. **The stringent requirements of *Yarnall* exist to encourage persons to transfer properties in the proper manner, by means of deeds, and to foreclose the claims of those who might otherwise assert questionable claims of ownership in others' properties.**

Fuisz v. Fuisz, 527 Pa. 348, 352–53, 591 A.2d 1047, 1049 (1991) (Emphasis Added). Further, where the alleged parol gift of land is between parent and child, evidence of an *"even more clear and weighty nature"* is required than is necessary where the alleged gift was between unrelated persons. Id. citing Yarnall Estate, 376 Pa. at 589-90, 103 A.2d at 758; Rarry v. Shimek, 360 Pa. at 318, 62 A.2d at 48.

The depositions of Carol Beth Wilson and Jacie Carter demonstrate that the Plaintiffs are not able to prove through circumstantial evidence the existence of a

---

[7] See also omitted citations of Yarnall Estate, 376 Pa. 582, 590, 103 A.2d 753, 758 (1954) and Rarry v. Shimek, 360 Pa. 315, 62 A.2d 46 (1948).

parol inter vivos gift. [8] When asked in what year the gift occurred, Carol Wilson

responded "That I can't tell you." (See Range App. Ex. 5, p.15) When asked what

the circumstances "were around the gift," Carol Wilson testified "I don't know."

(See Range App. Ex. 5, p.15) No deed, court order, recorded or written document

memorializes the gift. (See Range App. Ex. 5, p. 16,201 and 213) Jacie Carter's

testimony concerning the date and circumstances surrounding the gift was no more

precise. Ms. Carter testified:

> The gifting of the oil and gas property that Hugh had to his
> daughter and her husband, Alex Wilson, either it would be given as a
> gift for marriage, as a wedding gift, since Alex was an oil producer.
> In lieu of giving livestock, if he had been a farmer, the gift was oil and
> gas. And that was during the time frame---**any time frame**, between
> the time that Hugh Hanna purchased the property in 1903 to the time
> that – the printing of the farm map in 1911, with two wells showing
> clearly in the Hanna property at that time. (Emphasis added)

(See Range App. Ex. 11, p. 24-25). Ms. Carter added that she was unable to locate

a marriage certificate for Alex and Berdie Wilson but "assumed" they were

married in 1910. (See Range App. Ex. 11, p. 26) Jacie Carter also admitted "I have

no written evidence that the gift occurred." (See Range App. Ex. 11, p. 27 lines 8-

---

[8] Berdie Wilson was the paternal grandmother of Plaintiffs Patricia Carter, John
Allen Wilson and Carol Beth Wilson. (See Range App. Ex. 5, p. 1-12 and 14).
Berdie Wilson died in 1976. (See Range App. Ex. 5, p. 14) . Jacie Carter is the
daughter of Plaintiff, Patricia Carter, and though having no experience in real
estate title abstracting, conducted research in the Recorder of Deeds and Tax
assessment Offices of Washington County. (See Range App. Ex. 11, p. 21-22) The
Plaintiffs relied upon Ms. Jacie Carter's research in making their claim. (See
Range App. Ex. 5, p. 25 ,lines 18-24, and 28-29)

9) When asked if the alleged gift was to Berdie Wilson, alone, or included Alex Wilson as a co-donee, Ms. Carter responded "I can't differentiate whether it went to one person or another." (See Range App. Ex. 11, p. 38) Carol Wilson has no personal knowledge of the gift because she was not "even born yet." She did not have conversations with the persons involved concerning the gift. (See Range App. Ex. 5 p.67)

In addition to not knowing the date of the gift, Carol Wilson does not know the facts and circumstances surrounding the alleged oral gift. (See Range App. Ex. 5, p. 17) Carol Wilson knows of no witness to the alleged gift. (See Range App. Ex. 5, p. 17) The plaintiffs had no conversations with Berdie Wilson concerning the alleged oral gift from her great grandfather. (See Range App. Ex. 5, p. 18 and 67 and Ex. 11, p. 42 ) Carol Wilson acknowledged that she never heard Berdie Wilson say that she owned the oil and gas. Berdie Wilson's Will and her estate documents made no mention of any ownership of oil and gas rights for the Hanna Tract. (See Range App. Ex. 5, p. 45 and 201) Following Berdie Wilson's death in 1976 until 2014, when the original complaint was filed in this matter, Carter and Wilson filed no actions claiming their ownership of the Hanna Tract's oil and gas. (See Range App. Ex. p. 205-206) Berdie Wilson recorded no documents reflecting the transfer of oil and gas rights to Berdie Wilson and from Hugh Hanna. (See Range App. Ex. 5, p. 213)



Both in answers to interrogatories and during her deposition testimony,

Carol Wilson confirmed that the Carter and Wilson claims are based upon circumstantial inferences to be drawn from multiple documents. She specifically identified exhibits attached to the Amended Complaint, being Exhibits B,C,D,E,F,G,X,Y,Z, and AA thru KK, and those Bates stamp documents 001-0047 provided through discovery. (See Range App. Ex. 5, p. 184-187, and attached Ex. A., p.6 Answers to Interrogatories 6 thru 13).[9] These documents can be categorized as follows: tax returns for Berdie and Alex Wilson; Hugh Hanna Estate related documents; well records from DEP; the personal papers of Berdie Wilson; documents regarding Alex Wilson; obituaries; documents concerning other



properties owned by Hugh Hanna; tax assessment property cards from 1934; maps; documents provided by a library; the accounting of a guardian for Berdie Wilson's children and the testimony of Fred Gashel.

**Tax Return Evidence**

Carter and Wilson rely upon unsigned and unauthenticated tax returns, Exhibits B, C and D for Alex Wilson and Berdie Wilson. Neither Carol Wilson nor Jacie Carter had any personal knowledge of the preparation of these documents.

---

[9] The parties stipulated that Carol Beth Wilson was designated as the representative for all Plaintiffs. As such the parties agreed that testimony from other named Plaintiffs would be cumulative. The parties stipulated that the trial testimony of other named Plaintiffs is bound and limited by the testimony of Carol Beth Wilson. (See Range App. Ex. 9)

Putting aside the evidentiary challenges to the proper admission of those documents at trial, the contents of the documents do not prove that Berdie Wilson received the oil and gas estate as a gift from her father.

Exhibit B, an unsigned 1920 Tax Return, does contain a reference to rent and royalty income. (See Amended Complaint Ex. B)[10] However, Carol Wilson agreed the 1920 return did not indicate where the oil producing income came from (See Range App. Ex. 5, p. See Range App. Ex. 5, p.33) and did not reflect oil and gas well royalty income. (See Range App. Ex. 5, p. 35)

With regard to Exhibit C, an unsigned income tax return for 1921, and Exhibit D, an unsigned 1925 Federal Tax Return of Berdie Wilson, neither when considered, alone or together with all other evidence, demonstrates that Berdie and Alex Wilson derived oil and gas income from the Hanna Tract or made permanent improvements to it. With regard to Exhibit C, Carter and Wilson do not know from where the rents and royalties were derived. (See Range App. Ex. 5, p.42-43) Carol Wilson could not relate such oil and gas income to the oil and gas under the Hanna Tract (See Range App. Ex. 5, p.46) Exhibit D contained no indication that the income shown was attributable to oil and gas came from the Hanna Tract (See Range App. Ex. 5, p.51-53 and 56-57)

---

[10] The writing in the "Income From Rents and Royalties" section of the return was not legible.





These tax returns do not support Carter and Wilson's claim that Berdie and Alex Wilson "made permanent improvements to the oil and gas underlying..." the Hanna Tract.[11]  For the 1921 return, nothing on the return indicates that expenses labeled "Labor," "Depletion," and "Automobile" were incurred in operation of oil wells and an "associated pipeline" on the Hanna Tract.  (See Amended Complaint Ex. C)  The deductions set forth in Exhibit D also do not refer to the Hanna Tract.  (See Amended Complaint Ex. D line 8) These returns do not provide support for the assertion by Carter and Wilson that Berdie and Alex Wilson labored to produce oil and gas from the Hanna Tract.  Exhibits B, C and D to the Amended Complaint do not support Carter and Wilson's claim that Berdie Wilson made valuable



improvements to the Hanna Tract.

Carter and Wilson did not attach to their Amended Complaint the unsigned 1919 Tax Return purported to be that of Alex Wilson. (See Range App. Ex. 10, being "Carter 0048-0051" and Ex. 11 p. 151)  Similar to Exhibits B, C, and D this court could find no reference to the Hanna Tract on the return.  Under the section entitled "Income From Rents and Royalties" there exists an entry for "Oil Lease." In a box that requires the taxpayer to identify the "Name and Address of Tenant, Lessee, Etc." the words "Managed by self" appear.  No evidence was presented that established that the Gourley Lease had been terminated prior to 1925.  Instead,

---

[11] See Carter and Wilson Omnibus Brief p. 34.



W.C. McBride received an assignment in 1905 and himself assigned his interest in 1914 to the Delk Investment Corporation. If income had been derived from oil and gas production on the Hanna Tract, one would expect that the person receiving that income would report it and attribute it to either W.C. McBride or the Delk Investment Corporation. No such entries are found in Alex Wilson's 1919 Return or in the later returns being Exhibits B, C and D.

Carol Wilson stated that her grandfather and grandmother had oil and gas leases for multiple properties. (See Range App. Ex. 5, p. 55 lines 15-18) Carol Wilson and her fellow plaintiffs contend that Berdie and Alex Wilson were oil producers who owned and operated the Claysville Oil Company. (See Carter and



Wilson Omnibus Brief, p. 13 and Range App. Ex. 5, p. 125-126) However, Jacie Carter conceded the plaintiffs had not uncovered any documents that supported a conclusion that Berdie and Alex Wilson owned the Claysville Oil Company. Ms. Carter stated "There was no business incorporation documentation, no(sic), I could locate. But that still doesn't acknowledge that because the documentation cannot be found, that they were not the owners and it was not their business." (See Range App. Ex. 11 p. 50 -51) Ms. Carter and the Plaintiffs concluded that a reference to the source of Alex Wilson's income from "Salaries, Wages and Commissions" on a tax return proved his ownership of the Claysville Oil Company. (See Range App.

Ex. 11, p. 66-73 and 119-120)[12] To find that the mere reporting of income on a line of a tax return typically used to declare income derived from being an agent and not the principal of a business enterprise is an unreasonable inference. To circumstantially conclude that Alex and Berdie Wilson owned the Claysville Oil Company when no documents provide actual support for such a claim is an exercise in sophistry.

**Estate Documents for Hugh Hanna**

Numerous documents concerning Hugh Hanna's Estate were offered by Carter and Wilson to show the existence of a material issue of fact. Those documents included exhibits attached to their Amended Complaint, being Exhibits E, F, G, HH, II, JJ and KK and to their Answers to Interrogatories being labeled Carter 0027-0028.

Carter 0027-0028 is a draft of Hugh Hanna's Will. (See Range App. Ex. 5, p. 168, and Ex. 12) Carol Wilson explained that this draft shows Hugh Hanna was "specific" in directing the disposition of his property and "that he would not have missed something of oil and gas if he meant it to go anywhere other than he

---

[12] The 1925 Tax Return, purported by Carter and Wilson to be Berdie Wilson's, did not include a reference to the Claysville Oil and Gas Company or to income in the form of salaries, wages and commissions. In the 1925 return only the "sale of oil" was reported as "other income." (See Amended Complaint Ex. D and Range App. Ex. 10) In later testimony, Jacie Carter conceded that entries on Alex Wilson's Estate Documents did not show that he owned the Claysville Oil and Gas Company ( See Range App. Ex. 11, p. 119-120).



already gifted it to my grandmother." (See Range App. Ex. 5, p. 168 lines 9-19) Carol Wilson acknowledged the draft will did not state that Hugh Hanna previously gifted the oil and gas to Berdie Wilson. (See Range App. Ex. 5, p. 168 lines 20-23)

With regard to Exhibits E, F and G, these documents are Hugh Hanna's probated Last Will and Testament, Elizabeth Hanna's Election to take against the Will and the Deed of Distribution executed by Hugh Hanna's heirs. None of these documents contains an express reference to a severed oil and gas estate having been previously "gifted" to Berdie Wilson.



Exhibit JJ is correspondence from Howard T.E. Hanna to I.N. Miller the Executor of the Estate of Hugh Hanna. In the document, Howard T.E. Hanna gives an accounting of revenues and expenses from a joint venture involving sheep that Howard T.E. Hanna and Hugh Hanna conducted. (See Range App. Ex. 11 p. 130) Carol Wilson explained that the lack of a similar accounting from Berdie Wilson to Executor Miller demonstrated that Berdie Wilson and Hugh Hanna were not in business together to produce oil. (See Range App. Ex. 5, p. 148) Ms. Wilson, however, acknowledged that the fact that Hugh Hanna was not in the business of producing oil and gas did not preclude him from owning the oil and gas lying beneath the Hanna Tract. (See Range App. Ex. 5, p. 148-149)





With regard to Exhibit II, the document appears to be the First and Final Administrator's Account for Hugh Hanna. According to Carol Wilson this document revealed that from the date of Hugh Hanna's death in 1923 to 1924 he had income of $257.64 and it was not derived from oil and gas royalties. (See Range App. Ex. 5, p. 146) Carol Wilson acknowledged it was possible that any oil and gas well on the Hanna Tract may have stopped producing during this period. (See Range App. Ex. 5, p.148).

Exhibit KK is correspondence from Attorney R.W. Knox to Berdie Wilson concerning appraised values for the Hanna Tract, both surface and coal, and a 34 acre tract of coal located in Buffalo Township. (See Range App. Ex. 11, p. 130-131) Carol Wilson explained that the significance of this document shows that the Hanna Tract's oil and gas was not separately valued for inheritance tax purposes and "So therefore, the estate did not own the oil and gas." (See Range App. Ex. 5, p. 149 lines 3-13)[13] Ms. Wilson did not know whether the oil and gas estate was separately assessed for property tax purposes by Washington County. (See Range App. Ex. 5, p.149-150). However, Carter and Wilson adamantly maintained in their Omnibus Brief, that the Will of Hugh Hanna and the administration and

---

[13] This claim is factually incompatible with the Carter and Wilson's assertion that the oil and gas estate was not distributed through Hugh Hanna's Estate and by operation the laws of intestacy they own a portion of the oil and gas estate underlying the Hanna Tract.



distribution of his estate did not provide for the disposition of the oil and gas estate. (See Omnibus Brief at 14-20)

In support of this claim, Carter and Wilson cite Hyde v. Rainey, 233 Pa. 540, 82 A. 781 (1912). The decision in Hyde, was arrived at by the Court in order to give effect to all portions of the testator's Will. The Court explained, "...but the conclusion reached is the only one *which gives force and effect to every part of the will.* It does no violence to the language used; it makes the will consistent in all of its parts; and, in our opinion, carries out the manifest intention of the testatrix." Hyde v. Rainey, 233 Pa. 540, 549, 82 A. 781, 784 (1912). (Emphasis Added).



However, the language of the testator's Will in Hyde differs significantly from that of Hugh Hanna. In Hyde, the testator's Will provided: .

> The fifth item of the will was as follows: 'I will and bequeath to my son Harmon H. Rainey all that tract of land situated in Nottingham Township, Washington county, Penna., on which I now reside subject to the above named bequests which he is to pay to my daughters Lydia Bebout and Maria J. McGregor, and one hundred dollars to John Dixon will be hereinafter mentioned. The above named farm contains two hundred and twenty acres more or less, together with all the farming implements which I possess, including one two horse wagon, one four horse wagon and one spring wagon, and at the death of my son Harmon H. Rainey the above bequest is to descend to his children.'
> The sixth item of the will was as follows: 'It is my will that if the farm on which I reside *shall be leased for the purpose of mining for coal, gas or oil that the proceeds of the lease shall be divided* between my four children, viz.: Sarah E. Hyde, Lydia A. Bebout, Maria J. McGregor and Harmon H. Rainey, share and share alike.'

Hyde v. Rainey, 233 Pa. 540, 82 A. 781 (1912). (Emphasis Added) Hugh Hanna's Will contained no similar express reference to oil and gas. An express mention of coal being severed and previously given by gift to Howard T.E. Hanna is set forth. Conspicuously absent from Hugh Hanna's Will is any mention of a previous gift of oil and gas to Berdie Wilson. This distinction is critical as the following passage of the Hyde opinion makes clear:

> It is true that the severance is generally made by deed or other conveyance, *and that until so made the title to the land is regarded as an entirety,* including minerals as well as surface. But that the severance can be made by will is not an open question in this state; for it was expressly so decided in Christy v. Christy, 162 Pa. 485, 29 Atl. 781.

Hyde v. Rainey, 233 Pa. 540, 545, 82 A. 781, 783 (1912). As discussed above, neither the Hanna Tract's chain of title nor Hugh Hanna's Will includes any express severance of the oil and gas estate from the entirety of the Hanna Tract. Giving full force and effect to the scheme of distribution set forth in Hugh Hanna's Will does not require one to conclude that Berdie Wilson owned the oil and gas lying beneath the property.

With regard to Exhibit HH, this document is the inventory for the Hugh Hanna Estate. (See Range App. Ex. 11, p. 129) According to Carol Wilson the inventory contained no indication of any oil or gas being produced or any wells being valued. (See Range App. Ex. 5, p. 143) Carol Wilson stated that the

Inventory shows no oil as being an asset of Hugh Hanna's Estate. (See Range App. Ex. 5, p. 146) However, the Inventory and Appraisement did not disclose any real estate holdings for Mr. Hanna.

Carter and Wilson contend that the lack of any specific mention of the oil and gas estate in Hugh Hanna's Will or in other Estate filings supports their claim of a prior parol inter vivos gift of realty to Berdie Wilson. They emphasize that Hugh Hanna merely provided for the disposition of "surface" of the Hanna Tract. Such a conclusion is erroneous.

The Supreme Court in <u>Rogers Estate</u>, 379 Pa. 494, 495- 496, 108 A.2d 924 stated:

> In the settlement of a decedent's estate disputed title to property should not be determined upon exceptions to an inventory and appraisement which happens not to include the property claimed on behalf of the estate. The function and object of an inventory and appraisement in a decedent's estate is to fix presumptively the existence of property in the possession of the fiduciary and the value thereof. This is only prima facie evidence of ownership and value. *Such listing does not affect the true ownership and value.*

Id. (Emphasis added and citations omitted).

Thus, the lack of any mention of any real estate interest to include an oil and gas estate does not preponderate in favor of the conclusion that such failure to mention is due to a prior gift of the oil and gas estate to Berdie Wilson. The absence of a reference to ownership of the oil and gas estate in the Inventory could

be due to a variety of other circumstances. Simple oversight, neglect or some purpose *other than* the unsupported claim that at some unknown prior time Hugh Hanna gifted the oil and gas estate to Berdie Wilson, each could explain the lack of a reference to the Hanna Tract in the Inventory. All such possibilities including the alleged parol inter vivos gift are nothing more than base speculation. The evidence as accumulated and submitted by the parties does not permit any conclusion to be reasonably drawn from the lack of a reference to any real estate holdings of Hugh Hanna in his Estate Inventory.

Moreover, in Highland v. Com., 400 Pa. 261, 282, 161 A.2d 390, 401 (1960), the Pennsylvania Supreme Court rejected arguments similar to those now made by Carter and Wilson . Highland involved four parties vying for natural gas and oil rights. One claimant, Shawmut, made an argument similar to that advanced by Carter and Wilson. Specifically, Shawmut claimed that the combination of the absence of a specific reference to natural gas in a deed to a competing claimant (Thompson) along with a reference to the "surface" as being conveyed indicated the grantor (Arnold) had previously sold his interest in the oil and gas to Shawmut's predecessor in title. Shawmut contended the use of the word "surface" in a later deed from Arnold's personal representatives proved that Arnold at his death was already divested of any ownership in the natural gas. The Supreme Court rejected that argument and held that the "burden was upon the Shawmut



group to show, by clear and convincing evidence, that the parties intended that

natural gas be included within the prior deed to Shawmut's predecessor in title.

The Supreme Court found significant that "Neither the language of the deeds, the

surrounding circumstances nor the subsequent conveyances made by Arnold and

his successors in title demonstrate such intent." Highland v. Com., 400 Pa. 261,

279–80, 161 A.2d 390, 400 (1960).

A second claimant in Highland, "the Arnold Group", argued they owned the

rights to the disputed property in part because of a lack of reference to oil and gas

rights in estate documentation. In Highland, supra., the personal representative of

an estate had previously sought court approval for the sale of realty. In the petition

for such approval, the executor asserted that an attached schedule, "C", was a full,

correct statement of all the real estate of the testator. The executor's schedule C

did not list the rights to natural gas. Instead, the executor described the four

parcels by a metes and bounds description prefaced by the words "Surface Only."

On this basis, the Arnold Group, argued that the sale approved by the court did not

include natural gas interests. The Supreme Court did not agree. Specifically, the

Court held:

> A reference to Schedule 'C', [attached to the executor's petition for
> the sale] indicates that it was prefaced as a 'full, correct statement of
> all the real estate of [Arnold] * * * which has come to the knowledge
> of his executors'. The Arnold group now argues that the rights to the



natural gas were never listed by Arnold's personal representatives in the petition for sale, that no authority to sell such rights was requested and that no such authority was granted by the court.

Even though the descriptions of Parcels 1, 2, 3 and 4 were prefaced as *'surface only'*, yet Arnold's personal representatives, both in their petition and attached schedule, did represent to the court that they had listed all of Arnold's interest in realty in Clearfield County. There can be no doubt, from an examination of the court proceedings which led up to the petition for sale and to the sale itself, that Arnold's personal representatives, in order to liquidate his indebtedness, fully intended to sell *all* of Arnold's interest in realty in Clearfield County of whatever nature and there is no suggestion, expressed or implied, that there was to be a severance of the natural gas rights from the realty.

Highland v. Com., 400 Pa. 261, 282, 161 A.2d 390, 401 (1960) (Emphasis Added).



Thus, the mere reference in a conveyance to the "surface" of realty does not in and of itself reflect an intention to sever the surface from the oil and gas estate. Moreover, the lack of a reference to a severed oil and gas estate in Hugh Hanna's Will does not prove that he completed a parol inter vivos gift of the oil and gas estate to a specific person, **namely Berdie Wilson.** Much more evidence is necessary to arrive at that conclusion.

In Exhibit G, the Deed of Distribution executed by Berdie Wilson, she and Hugh Hanna's other heirs declared a different intention. Specifically, they explained their purposes as follows:

> AND WHEREAS, the failure of the testator to provide for the payment of his debts or for the expenses of settling his estate, and also, the election of his widow to take against said will, rendered impossible the distribution of said estate, *real and personal*, in all



respects as intended and provided by said testator, and therefore, all of the persons interested as devisees and legatees under said will, agreed upon a distribution of said estate, real and personal, adjusted to the circumstances and approaching as nearly as possible to that which the testator directed in his will. This was accomplished by placing a money value upon *all of testator's estate, real and personal*, the agreed value of the real estate being the valuation placed upon it for transfer inheritance tax purposes, and the agreed value of the personal estate being the valuation placed upon it by the appraisers thereof for administration purposes. *The entire estate, real and personal, was then submitted by agreement to the Orphan's Court of Washington County, Pennsylvania and distribution was made by said Court as though the entire balance for distribution had consisted of money.* See Decree of Distribution at No. 141 August Term, 1924, A.A. of said Court.

(See Amended Complaint Ex. G being DBV 541 page 325) (Emphasis Added).

The Deed of Distribution shows a clear intention by Berdie Wilson and her fellow heirs to dispose of the entire Hugh Hanna Estate. Though Berdie Wilson and the other heirs made provisions in the Deed of Distribution to secure the coal rights previously given to Howard T. E. Hanna they made no similar provision for oil and gas rights being distributed to Berdie Wilson.[14]

---

[14] Carter and Wilson in their "Sur-Reply Brief" argue that reliance upon evidence of the payment of taxes and disclosure in an estate inventory may be relied upon to establish evidence of ownership. They cite Herder Spring Hunting Club v. Keller, 143 A.3d 358 (Pa. 2016), cert. denied, 137 S.Ct. 641 (2017). Having reviewed Herder, this court can find no portion of the clear and straight forward opinion that can be fairly read to support Carter and Wilson's interpretation.

In Herder, Justice Baer framed the issue before the court as follows:

The parties' claims rise or fall based upon whether a 1935 tax sale resulted in the transfer of the entire property or merely the surface rights. After extensive review of the historical law regarding tax sales of unseated land in Pennsylvania, we conclude that the tax sale related to the entire property at issue, including both the



surface and subsurface estates.... As will be evaluated after discussion of the
relevant law, the critical question in this case is whether the 1935 and 1941 sales
involved the entire Eleanor Siddons Warrant or merely the surface rights

Herder Spring Hunting Club v. Keller, 143 A.3d at 359 and 361. The plaintiff in Herder Spring, contended that a 1935 tax sale "extinguished any prior reserved estates in concurrence with the longstanding policy of 'title-washing.' "In furtherance of its argument, Herder Spring observed that the deed from the Centre County Commissioners to Herr did not reference only the "surface estate" but rather the Eleanor Siddons Warrant." Herder Spring Hunting Club v. Keller, 143 A.3d at 361. Justice Baer on behalf of the majority stated:

> we reject the Keller Heirs' claim that the reference to the "land surveyed to Ralph Smith" in the 1936 Deed from the Treasurer to the County Commissioners indicated that the deed was limited to the surface estate. Instead, we recognize that unseated land was assessed and taxed in the name of the Warrant, and any reference to the presumed-current owner, such as Ralph Smith, was merely used for descriptive purposes.

Herder Spring Hunting Club v. Keller, 143 A.3d at 373. Justice Baer explained that real estate tax on unseated land was the liability of the land rather than the owners. "Therefore, if the property was assessed as a whole property and none of the owners paid the tax, then the property would be sold as a whole to satisfy that tax." Herder Spring Hunting Club v. Keller, 143 A.3d at 375.

Justice Baer added:

> We reiterate that the caselaw counsels that unseated land should be assessed according to the original warrant, absent direction from the owners, and that a tax sale conveys the property covered by the assessment.

Herder Spring Hunting Club v. Keller, 143 A.3d at 375.

Justice Baer set forth the limitations regarding the holding in Herder as follows:

> We observe that the holding in this case applies to a very limited subset of cases involving quiet title actions for formerly unseated land sold at a tax sale prior to 1947. Indeed, within this subset of cases, the decision would not govern those tax sales which specified whether the assessment involved the surface or the mineral rights. Additionally, the Keller Heirs contend that it would not apply to tax sales where the severance occurred after the tax assessment, as our prior cases address such scenarios. Furthermore, it would not apply where owners can meet the adverse possession standard, which the trial court found Herder Spring missed. Therefore, this case has limited application, though substantial significance to those to which it applies.



## Well Records

Carter and Wilson submitted documents, Exhibits X and Z, being "well records" for two (2) wells on the Hanna Tract. Carter and Wilson contended these records demonstrated there were producing wells on the Hanna Tract. They argued that Alex Wilson was "an oil producer" and that these documents proved that Alex and Berdie Wilson were operating oil wells on the Hanna Tract. For these reasons, Carter and Wilson claim Hugh Hanna must have given his oil and gas rights to Berdie Wilson.

With regard to Exhibit X to the Amended Complaint, Carter and Wilson assert these are well records from DEP for two (2) wells labeled L.L. Hilberry # 1 and #2. (See Range App. Ex. 5 p. 81-82 and Ex. 11, p. 99-104) Hilberry is the last name of an owner of the Hanna Tract, who is in the chain of title for the Individual Defendants, Fanning, Dutton and Cerciello. Carol Wilson's belief is that Alex Wilson drilled the wells during his lifetime because he was "an oil producer." (See Range App. Ex. 5, p. 87 lines 8-15)

However, Carol Wilson admitted the well records did not indicate that Berdie Wilson owned or operated the wells or owned the property upon which the

---

Herder Spring Hunting Club v. Keller, 143 A.3d at 378-79.
In the dispute before this lower court, important is the fact that no evidence was presented which claimed that Carter and Wilson rest their claims upon a tax sale of unseated land. No evidence was presented that the Hanna Tract was unseated land.





wells were found. (See Range App. Ex. 5, p. 91-92) Carol Wilson had no knowledge of when the wells stopped producing. During her lifetime, Carol Wilson had never seen the wells. (See Range App. Ex. 5, p. 95-96) Carol Wilson conceded the wells were not producing. (See Range App. Ex. 5, p.85) Carol Wilson's comments about the wells identified as Hilberry # 1 and # 2 were not based upon any information she received from DEP. (See Range App. Ex. 5 p. 83-84 and 85 lines 15-24) Carol Wilson acknowledged that: i) she lacked production records for the Hilberry # 1 Well and Hilberry #2, ii) had no records of the well being drilled, iii) possessed no knowledge of when the well was drilled, iv) knew of no records that demonstrated her grandfather Alex Wilson drilled the wells, and



v) had no documentation as to the identity of the operator of the well (See Range App. Ex. 5, p. 86 and p. 89 and Ex. 11, p. 103-104).

With regard to Exhibit Z, Carter and Wilson asserted that it was a photograph of Berdie Wilson at a well-site. Carol Wilson acknowledged "but we have nothing to state that it is on that farm (Hanna Tract)." (See Range App. Ex. 5, p.97-98) Jacie Carter similarly conceded that the photograph could have been of a property other than the Hanna Tract. (See Range App. Ex. 11, p. 107) Further, Carol Wilson was unable to positively identify Berdie Wilson as being the lady in black depicted in the photograph. (See Range App. Ex. 5, p. 99-100) Carol Wilson admitted she did not know what well is depicted in the photograph but simply

 assumed that the well depicted was on the Hanna Tract (See Range App. Ex. 5, p. 101-102).

## Berdie Wilson's Personal Papers

Carter and Wilson provided several documents, being Exhibits AA, BB, and "Carter 0044-0047, that were discovered by Jacie Carter. Carter and Wilson advanced that these documents supported their claim.

With regard to Exhibit AA, a hand written receipt that Jacie Carter found in the personal papers of Berdie Wilson, no reasonable inference can be drawn that it relates to oil and gas income derived from the Hanna Tract. Both Carol Wilson and Jacie Carter conceded there was no indication on the document that such financial reporting concerned or related to the wells on the Hanna Tract or that Berdie Wilson owned the wells (See Range App. Ex. 5, p.105-106, 112, and 115 and Ex. 11 p. 110).

Exhibit BB is purportedly a letter from D.L. Thomas to Alex Wilson dated July 6, 1916. Carol Wilson stated the letter "may or may not relate to the farm (Hanna Tract)." (See Range App. Ex. 5, p. 115) Jacie Carter explained that the letter dealt with a division order for two properties adjacent to the Hanna Tract, being the J.E. Worrell Farm and the I.N. Miller Farm. (See Range App. Ex. 11, p. 111) However, Exhibit BB does show that Alex Wilson had a lease for other

properties to include a tract identified as the J.E. Worrell Farm (See Range App. Ex. 5, p.117) Exhibit BB shows that Alex Wilson may have been "involved with wells on other properties." (See Range App. Ex. 5, p. 118) Exhibit BB shows Alex Wilson may have had sources of oil and gas income from properties but not the Hanna Tract. (See Range App. Ex. 11, p. 111lines 7-25)

Carter 0044-0045 are documents indicating "income from oil" (0044) and the existence of a "lease." (0045) (See Range App. Ex. 5, p. 178) Carol Wilson admitted these two documents do not specifically indicate any relationship to the Hanna Tract. (See Range App. Ex. 5, p. 179)

Carter 0046 was described by Carol Wilson as having been "done in prep for that final settlement" of the Hugh Hanna Estate. (See Range App. Ex. 5, p. 179 and Ex. 12) Carol Wilson noted the document did not specifically mention oil and gas interests. (See Range App. Ex. 5, p. 181)

Carter 0047 is a copy of checks in Berdie Wilson's handwriting and an envelope. (See Range App. Ex. 5, p. 180-181) Carter and Wilson never explained the significance of these documents as they relate to the Hanna Tract. Instead, a reference is made to Miller and Worrell and "1916 Statements." Jacie Carter explained that the checks were included as "an example of Berdie Wilson's handwriting." (See Range App. Ex. 11, p. 149)



Carter and Wilson also offered numerous documents related to Alex Wilson, Berdie Wilson's husband. (See Amended Complaint Exs. CC, DD, EE, FF and Range App. Ex. 12, Bates Stamp Carter 0018, and 0021-0022). As explained below, these documents do not provide any basis upon which to draw an inference that Hugh Hanna gave his oil and gas rights to Berdie Wilson.

Exhibit CC is a deed from John and Clara Worrell to Alex B. Wilson for 75 acres and 136 perches located in Buffalo Township, and is not related to the Hanna Tract. (See Range App. Ex. 11 p. 112) In this conveyance, the grantor, John Worrell, excepted and reserved "oil and gas together with the right of drilling for, producing and transporting the same." (See Amended Complaint Ex. CC and Range App. Ex. 5, p. 123).

Exhibit DD was identified by Carol Wilson and Jacie Carter as being the Inventory and Appraisement of the Alex B. Wilson Estate and the First and Final Account of Berdie Wilson (See Amended Complaint Ex. DD, Range App. Ex. 5, p. 123-124, Ex. 11, p. 114) Carol Wilson conceded she did not know if any part of Alex B. Wilson's inventory related to oil and gas interests in the Hanna Tract and acknowledged that no part of the Inventory stated that Alex B. Wilson had an interest in the oil and gas lying beneath the Hanna Tract. (See Range App. Ex. 5, p.

126 lines 13-24- p. 127 line 8, and p. 131 lines 5-9 and 17-21) Carol Wilson admitted that the Inventory and Appraisement did not show that Berdie Wilson had an ownership interest in the oil and gas "under the" Hanna Tract. (See Range App. Ex. 5, p.127 lines 20-23).[15]

Exhibit EE is an obituary for Alex B. Wilson that Jacie Carter obtained from a library. (See Range App. Ex. 11 p. 126) Carol Wilson admitted the obituary does not indicate Alex Wilson owned oil and gas wells located on the Hanna Tract. She further conceded the obituary did not state that Alex Wilson owned the oil and gas on the Hanna Tract or that Berdie Wilson produced oil and gas "under the property" (Hanna Tract) (See Range App. Ex. 5 p. 137-138).

Exhibit FF is a 1938 letter regarding Alex B. Wilson's leases addressed to Mr. G. Ross Sproat concerning Workmen's Compensation insurance. (See Range App. Ex. 11, p. 126) Jacie Carter confessed that the letter "as stated" did not relate to the Hanna Tract. (See Range App. Ex. 11, p. 126 lines 16-18) Instead, Carter commented "I would say these are referencing the Miller-Worrell leases..." (See

[15] Jacie Carter contended that a reference to "398.26" barrels of oil was related to the Hanna Tract. She stated "I would state that the line item 398.62 barrels of oil, is related to the property (Hanna Tract), due to the fact that it *doesn't state a lease name with that line item."* (See Range App. Ex. 11, p. 117, lines 18-22). This pattern of drawing an inference of ownership from a lack of evidence of ownership was also repeated by Carol Wilson during her deposition testimony. Nonetheless, on this particular point Carol Wilson conceded she did not know where the barrels came from and what a $65 check from Preston Oil Co. was attributable to. (See Range App. Ex. p. 123-124 and 132).

Range App. Ex. 11 p. 127) Carol Wilson conceded she did not know what leases the workmen's compensation policy covered. (See Range App. Ex. 5 p. 140) Carol Wilson contends that this document shows that Berdie Wilson continued Alex Wilson's oil and gas business because it is "a logical assumption." Carol Wilson conceded nothing on the letter stated that Berdie Wilson was continuing the oil and gas business of her husband. (See Range App. Ex. 5, p. 141) Further, Carol Wilson never recalls Berdie Wilson stating that she and Alex Wilson owned the Claysville Oil Company (See Range App. Ex. 5, p. 45).

Carter 0018 is an assignment of $1/8^{th}$ working interest in an oil and gas lease for property located in Buffalo Township, Washington County from Hannah Connors et. al. to Alex B. Wilson. (See Range App. Ex. 12) This document does not involve the Hanna Tract. In this assignment, Alex B. Wilson has an individual interest in the lease and does not transact business through the Claysville Oil Company. Jacie Carter stated the significance of these documents is that Alex Wilson "was an oil producer in the region adjacent to the Hanna property." (See Range App. Ex. 11, p. 137, lines 16-20)

Carter 0021-0022 (See Range App. Ex. 12) is an oil and gas lease for property in Buffalo Township. (See Range App. Ex. 5, p. 160) In this lease, Alex



B. Wilson has an individual interest in the lease and does not transact business through the Claysville Oil Company. (See Range App. Ex. 5 p. 161).

**Obituaries**

Aside from the Alex Wilson obituary, Carter and Wilson offered two (2) other obituaries as evidence to support their claim.

Exhibit GG is a newspaper obituary reporting the death and funeral of Hugh Hanna. Carol Wilson conceded this document did not show that Hugh Hanna gifted property to Berdie Wilson. (See Range App. Ex. 5, p. 142) Further, Carol Wilson acknowledged that Hugh Hanna could have had oil and gas leases for the Hanna Tract. (See Range App. Ex. 5, p. 143).

Carter 0026 is an obituary for Howard T.E. Hanna. (See Range App. Ex. 12) Carol Wilson could not explain the relevancy of the document to her claim other than it being "information." (See Range App. Ex. 5, p. 167-168)

**Other Property Documents for Hugh Hanna**

Carter and Wilson argued that documents regarding other real estate owned by Hugh Hanna during his lifetime supported their claim.

In Carter 001-002, 005-007, 008 and 009-011, Carter and Wilson provide a variety of property documents related to Hugh Hanna and real estate other than the



54 | P a g e



Hanna Tract. (See Range App. Ex.12) Carter 001-002 is a deed of James Clark, assignee of Alexander Henderson, to Hugh Hanna for property located in Chartiers (not Donegal) Township, Washington County. Carter 005-007 is a copy of an oil and gas lease between Hugh Hanna and the Philadelphia Company and related to the Chartiers' Property. Carter 008 is an oil pipeline agreement for the Chartiers Property. Carter 009-011 being the Deed conveying the Chartiers' property from Hugh and Elizabeth Hanna to William Bedillion which included a clause making the conveyance subject to the oil and gas lease that Hugh Hanna had executed in favor of the Philadelphia Company. Carol Wilson explained that such evidence

"...demonstrates that he was knowledgeable of oil and gas, and he even gave out a



lease on that property. So it was not that he was naïve to the fact of how oil and gas works. Therefore, he gifted the oil and gas under his property to my grandmother, rather than lease it out to someone else." (See Range App. Ex. 5, p. 151-153 and Ex. 11 p. 132-133) Such an inference does not naturally and logically flow from the evidence of Hanna's ownership, oil and gas leasing and later sale of the Chartiers Township property, whether considered as an isolated fact or in combination with all other facts and circumstances presented in this case. Such a speculative inference is an Olympian leap of logic.

**Tax Assessment Documentation for the Hanna Tract**

Carter 0012-0017 (See Range App. Ex. 12) are triennial assessment cards from Washington County. Carol Wilson could not explain the probative value of these documents. (See Range App. Ex. 5, p. 154-156) Jacie Carter explained that the assessment cards for the Hanna Tract in 1934 referenced only the surface of the property and for that reason Howard T.E. Hanna only owned the surface and not the oil and gas estate.

**Maps**

Carter 0023 (See Range App. Ex. 12) is a map from the Pennsylvania Department of Environmental Protection. Carol Wilson had no personal knowledge concerning the map and specifically what it depicted. She testified that Jacie Carter, her niece, discovered the map. (Range App. Ex. 5, p. 163-164) Jacie Carter testified that the map depicted two wells on the Hanna Tract. (See Range App. Ex. 11 p. 138).

The map provides no support for the claim that Hugh Hanna made an oral gift of oil and gas rights to Berdie Wilson.

In support of their claim, Carter and Wilson also submitted several documents from Range Resources representatives.

Carter 0024 (See Range App. Ex. 12) is a document labeled "Offer to Lease" with a Range Resources trademark. The offer is addressed to the "Wilson Hanna Heirs" regarding Townships "Chartiers, Donegal, Morris" and stated "will lease the property in Chartiers and Donegal subject to title. Further research is needed in Morris." (See Range App. Ex. 12) Carol Wilson explained that this offer was given to her at a meeting with the Ward Group in Claysville. At that time, Range Resources was to have leases for the Carter and Wilson plaintiffs to sign. However, Range could not locate the leases and provided Carol Wilson the offer "so we had a record of being there and that they were willing to lease to us." (See Range App. Ex. 5, p. 164) Wilson continued that the offer showed "that they acknowledge we had an interest in the property or we thought we had an interest in the property." (See Range App. Ex. 5, p. 164-165)

Jacie Carter, however, testified differently. Ms. Carter conceded that Range provided Carter and Wilson no lease and were offering a lease subject to "further research." (See Range App. Ex. 11 p. 139-140) This document does not specifically support the claim that Hugh Hanna completed a parol inter vivos gift

of the oil and gas estate to Berdie Wilsons. The document plainly stated that it was "subject to title." No material terms such as length of term, amount of royalty or precise location of property were set forth in the offer.

**Documents received from a library**

Carter 0025 (See Range App. Ex. 12) is a document with references to both Ancestry.com and the 1940 United States Census. Carol Wilson confessed to having no direct knowledge of the document. The document states that Francis Wilson, the son of Berdie and Alex Wilson, was employed as a "pumper." Carol Wilson stated that Francis Wilson was her father and that he was in the "oil business, which is after the fact, so---it's a family business in other words." (See Range App. Ex. 5, p. 166) Jacie Carter acknowledged the document was not received from the U.S. Census Bureau but from a library. (See Range App. Ex. 11, p. 143-144)

This court is unable to draw any reasonable inference from this document that supports the Plaintiffs' claims.

**Accountings of the Guardian for Berdie Wilson's Children**

Carter 0029-0034 and Carter 0035-43 are, respectively, a final account and a statement of expenses of George B. Lysle(sic) as guardian for Ruth Wilson and

Francis H. Wilson, minors. (See Range App. Ex. 11, p. 144-147) Carol Wilson stated that Ruth Wilson was her aunt and was the daughter of Berdie Wilson. (See Range App. Ex. 5, 169-170, 172-173) Carol Wilson claimed that she believed, but had no direct knowledge, that Berdie Wilson provided the information for the Lysle(sic) accounting because she was the mother of Francis and Ruth Wilson and was the person providing their support. (See Range App. Ex. 5 p. 174, p. 176 lines 21-24 and p. 177 lines 14-16 and 177-178 ) Carol Wilson conceded that the entries on this document specifically do not relate to the Hanna Tract and that the oil referenced on the account could be from "any property." (Range App. Ex. 5, p. 171 lines 18-24) Carol Wilson acknowledged her belief was based upon the assumption that the oil came from the Hanna Tract because she and the other plaintiffs "know of no other property they could have owned." (See Range App. Ex. 5, p. 172) Though the absence of evidence can itself be probative of an issue, the absence of specific proof as to where oil income is derived does not demonstrate ownership of a specific interest in subsurface oil and gas lying beneath a particular tract of land.

With regard to these documents and Berdie Wilson's payment of income taxes, Carter and Wilson argue that the Supreme Court's ruling in the Estate of Allen , 488 Pa. 415, 412 A.2d 833 (1980) supports the claim they are making. In Estate of Allen, the court concluded that a decedent's receipt of income for three

certain properties was indicative of his ownership in the absence of other evidence proving ownership. Specifically the Allen Court explained.

> ...appellants argue that with respect to three parcels of real property the Orphans' Court's confirmation of the account and adjudication was premature and not based upon the testimony of record. The three parcels of realty, all situate in Philadelphia, were listed by the auditor in the account as filed, but were noted in the account as having been "included as memorandum only. Rents have been collected, but ownership has not been determined." In the event, ownership never was determined, and the court below, in its adjudication dismissing appellants' objections to the account, merely noted "the auditor has been informed that it is impossible to determine to whom these properties are titled and belong."
>
> ...**Instantly the only finding upon which the decree rests is that title to the realty at issue is impossible of ascertainment.**
> The court-appointed auditor is empowered to convene hearings, administer oaths, and take testimony. In re Krepinevich's Estate, 433 Pa. 78, 248 A.2d 844 (1969); Act of June 30, 1972, P.L. 508, No. 164, s 2, 20 Pa.C.S.A. s 754. Moreover, auditors are empowered to issue subpoenas with or without a clause of duces tecum. Act of June 30, 1972, P.L. 508, No. 164, s 2, 20 Pa.C.S.A. s 753. The record of the instant case reveals no hearing was held to ascertain title to the realty at issue. No subpoenas were issued. **There is no evidence of record which would indicate the auditor attempted to ascertain the record owners of the properties via title search. There is no evidence of record which would indicate the auditor contacted the municipal taxing authority to determine who had been paying taxes on the properties. In short, the record is barren of competent, credible evidence to support the finding that ownership of the realty is impossible of ascertainment, on which finding the decree of the Orphans' Court, in turn, rests.**
> On the contrary, the record contains evidence, notably, although not merely, the fact that income derived from the properties at issue was reported by decedent on his federal personal income tax returns, which could indicate ownership by testator.
> In the absence of evidence to support the findings upon which the decree rests, we vacate the decree and remand for a determination,

insofar as is in fact possible, of the state of decedent's interest in the contested properties.

Estate of Allen, 488 Pa. 415, 426-27, 412 A.2d 833, 838-39 (1980) (emphasis added).

The facts of Allen are distinguishable from this case in two (2) respects. First, the evidence advanced by Carter and Wilson does not specifically indicate the oil and gas income in the guardian's final account was derived from oil and gas produced from the Hanna Tract. Such income is not attributed to any particular property. In Allen, the auditor determined the rents were derived from and reported to federal tax authorities as income produce from the three (3) properties in question. Second, evidence from the chain of title demonstrates that record title for the properties is in the Defendants Fanning, Cerciello and Dutton. In Allen, the record before the Supreme Court lacked such evidence.

Carter and Wilson contended in their Omnibus Brief that Berdie Wilson's support came from oil and gas income derived from the Hanna Tract. However, Carol Wilson's testimony did not support that claim. Carol Wilson testified that she assumed that because Alex Wilson was an oil producer, Berdie Wilson lived off the money he generated and invested it in AT & T stock. (See Range App. Ex. 5, p. 188-189) Carol Wilson claimed that such income that permitted her to later prudently purchase blue chip stock was derived from wells on the Hanna Tract.

(See Range App. Ex. 5, p. 190) When asked to identify the documents that proved such a claim, Carol Wilson merely referred to Amended Complaint Exhibits B through G, X through Z, AA through KK, and Carter-Wilson Bates Stamped Documents 001-0047. (See Range App. Ex. 5, p. 189-190)

Gashel Testimony

Carter and Wilson both in their Omnibus Brief and at argument claimed that the testimony of Fred Gashel supported their allegations that Berdie Wilson exercised dominion and control over the Hanna Tract. A review of Mr. Gashel's deposition testimony demonstrates he has no personal knowledge of such actions by Berdie Wilson.

Mr. Gashel was born in 1933 and lived across from the Hanna Tract during his youth. Mr. Gashel knew Howard T.E. Hanna who lived on the Hanna Tract. According to Mr. Gashel, Berdie Wilson lived "elsewhere" on Petroleum Avenue. (See Range App. Ex. 13, p. 9-10 and 12-13) Mr. Gashel testified he knew "nothing" about the ownership of oil and gas under the Hanna Tract. (See Range App. Ex. 13, p. 18) He stated he never talked to Howard T.E. Hanna or Berdie Wilson regarding the oil and gas rights to the Hanna Tract. Mr. Gashel testified that he had no knowledge that Berdie Wilson was "gifted the oil and gas," no "idea" who owned the oil and gas and never saw Berdie Wilson on the property operating an oil and gas well. (See Range App. Ex. 13, p.26)

Mr. Gashel stated that through "hearsay" he heard a "story" concerning Berdie Wilson "putting a halt" to an effort by Logan Hilberry to run a gas line from the wells on the Hanna Tract to his home. According to the "story," a gentleman named Leo Bane learned of Mr. Hilberry's efforts to connect his home on the Hanna Tract to a gas well on the property. As related by Mr. Gashel, Mr. Bane went to Berdie Wilson because she had ownership of the property and Berdie Wilson stopped Hilberry from doing so. (See Range App. Ex. 13, p. 19-23) Mr. Gashel acknowledged he had no personal knowledge of such facts and he could not remember who told him the "story." (See Range App. Ex. 13, p.19 and 24)

Mr. Gashel's recounting of the Berdie Wilson Logan Hilberry "story" is inadmissible hearsay. See Pa.R.E. § 801. An unknown declarant told Mr. Gashel the "story" out of court. The Pennsylvania Supreme Court has previously ruled that similar such evidence concerning an alleged gift is not admissible from known declarants. See In re Donsavage's Estate, 420 Pa. 587, 598–99, 218 A.2d 112, 120 (1966). In Donsavage's Estate, two witnesses, Travis and Girton, testified that a donee, Mockler, told them she received stock certificates from a decedent, Donsavage. The Supreme Court held such testimony was inadmissible hearsay.[16]

---

[16] In Donsavage, the Court explained:

It was an attempt to prove by these witnesses not what the decedent said to them but what Mrs. Mockler said the decedent had said to her. In Hartley v. Weideman, 175 Pa. 309, 317, 34 A. 625, 626, we said: 'It is text law that the declarations of a party must be proved by one who heard them. It will not do to show by A. that B.

The testimony of Fred Gashel does not support the claim that Berdie Wilson exercised dominion and control over the oil and gas located on the Hanna Tract.

**No evidence of a parol inter vivos gift**

A lower court finding of inter vivos gift is not supportable where there is insufficient evidence establishing with necessary precision "just *when, where or under what circumstances such declarations were made, or when such gift was in fact made.*" Where the declarations relied upon are entirely too loose and vague to prove an *inter vivos* gift, such declarations do not constitute clear and convincing evidence of an *inter vivos* gift. Tomayko v. Carson, 368 Pa. 379, 383–84, 83 A.2d 907, 909 (1951) (Emphasis Added).

As the Supreme Court in In re Yarnall's Estate, 376 Pa. 582, 588, 103 A.2d 753, 757 (1954) directed:

> The Statute of Frauds Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1, requires a transfer of title to real estate to be in '* * * writing, or by act and operation of law.' There may be a valid *parol inter vivos* gift of an interest, in whole or part, of real estate, where such gift is

---

told him that he heard C. make a certain statement, if it is C. who is to be affected by the testimony. This evidence should have been excluded.' See also: Johnson v. Peoples Cab Co., 386 Pa. 513, 515, 126 A.2d 720. ...

In the case at bar, although the declarations sought to be shown were those of the decedent and against decedent's interest, they were allegedly made to the donee of the gift and were sought to be shown by witnesses who did not hear the declarations made by the decedent but heard the donee of the gift state that the decedent had declared to her.

In re Donsavage's Estate, 420 Pa. 587, 598–99, 218 A.2d 112, 120 (1966)

followed not only by a change of possession, but by the making of such permanent improvements on the property as could not be compensated in damages.

In re Yarnall's Estate, 376 Pa. at 588, 103 A.2d at 757 (1954). The Yarnell Court noted that repairs and maintenance to property did not amount to the type permanent improvements necessary to prove a parol gift of a real estate interest. Yarnell, 376 Pa. at 582 , 103 a.2d at 759.

Other Pennsylvania appellate courts have come to a similar conclusion. In Lang v. Lang, 140 Pa.Super. 356, 359, 14 A.2d 216, 218 (1940), the Superior Court found insufficient an alleged donee's claim of a parol gift where she and her husband moved into the property and began certain work to improve the property. In Zigmantanis v. Zigmantanis, 797 A.2d 990 (Pa. Super. 2002), the Superior Court found insufficient evidence that: i) an alleged donor on several occasions told several witnesses that his home was to go to his son Edward; ii) Edward paid household bills for the donor; iii) Edward lived in the home with his parents for 22 years; iv) Edward made substantial improvements to the property; and v) Edward paid both the inheritance tax and the mortgage for the property. See Zigmantanis v. Zigmantanis, 797 A.2d at 992–94.

The evidence by Carter and Wilson have presented falls far short of that found to be insufficient in Yarnell, Lang and Zigmantanis. Carter and Wilson offered no evidence that Berdie Wilson made permanent improvements to the

Hanna Tract, paid bills associated to the property or occupied the property. Both the chain of title evidence and the testimony of Fred Gashel demonstrate that Howard T.E. Hanna occupied the property. Carter and Wilson did not allege nor offer evidence that established precisely when, where and under what circumstances Hugh Hanna made a declaration of gift and when such gift of the oil and gas estate was made to Berdie Wilson. Carter and Wilson advance that such a gift occurred during Hugh Hanna's "lifetime." (See Carter and Wilson Omnibus Brief. P. 4). They posit that the "totality of facts and circumstances" to include "timing, surrounding circumstances, and subsequent acts establish the act of the gift." (See Carter and Wilson Omnibus Brief, p. 2). As discussed at length above, the totality of those circumstances do not reasonably lead to the conclusions Carter and Wilson assert.

Carter and Wilson have argued that the court, at the summary judgment stage, should apply a less exacting standard than that set forth in Yarnell, Fuisz, Tomayko, Zigmantanis and Lang. Carter and Wilson contend the mere existence of an issue of fact suffices. This argument somewhat misses the mark. [17] The Superior Court in Manley v. Manley, 238 Pa.Super. 296, 357 A.2d 641 (1976) explained:

---

[17] After several weeks of reading, reviewing and considering the voluminous pleadings, discovery responses, deposition transcripts, aged documents and briefs this court has been unable to identify a disputed material fact between the parties. The parties are not disputing what the facts are. Instead, they have hotly contested what the facts mean.



The Statute of Frauds, 33 P.S. s 1, prohibits the creation of interests or estates in any land by parol. Its obvious purpose is to prevent the assertion of verbal understandings, and to obviate the opportunity for fraud and perjury. 'It is not a mere rule of evidence. It is a declaration of public policy': Holland Furnace Co. v. Keystone Dehyd. Co., 151 Pa.Super. 495, 499, 30 A.2d 872, 874. A writing signed by the parties is required, and even courts of equity, though dispensing with the form, firmly demand the substance.' Brotman v. Brotman, supra, 353 Pa. at 573, 46 A.2d at 177. The failure of the moving party to sustain this heavy burden with respect to each and every element is fatal to his claim: 'It is no answer to say that the credibility of witnesses is for the jury, and they may disbelieve the testimony if they see fit to do so. That argument will not avail in this class of cases, for the question here is as to the character of the proof, because it is offered for the purpose of creating title to land by parol. It must conform to certain requirements, and if it does not, it will not suffice to create such a title; and of this the court must judge.' Erie & W.V.R. Co. v. Knowles, supra, 117 Pa. at 86, 11 A. at 256.

Manley v. Manley, 238 Pa.Super. 296, 306–10, 357 A.2d 641, 646–48 (1976).

(Emphasis Added).

Having done so, this Court concludes the admissible evidence in the record, considered in the light most favorable to Carter and Wilson, fails to establish a prima facie case that Hugh Hanna during his lifetime made an oral gift of his oil and gas rights to Berdie Wilson.

**CONCLUSION**

In the case before this court, the admissible facts presented by Carter and Wilson do not reasonably support the inferences Carter and Wilson invite this court to draw. Contrary to Carter and Wilson's assertions in their Omnibus Brief

and at argument, the Defendants have not invited the court to engage in trial level fact finding nor has this court done so.

Instead, the Defendants have asked this court to examine the evidence submitted by the plaintiffs and determine if a prima facie case exists. In doing so, this court may consider " ...*the admissions of the opposing party(non-moving party) or the opposing party's own witnesses...*" and the entry of summary judgment may be based on such oral testimony. Lineberger v. Wyeth f/k/a American Home Products Corporation, 894 A.2d 141 (2006) as cited in InfoSAGE, Inc. v. Mellon Ventures, L.P., 896 A.2d 616, 631 (Pa. Super. 2006). Further, where allegations in an amended complaint are based principally on speculation and conjecture, summary judgment is appropriate. InfoSAGE, Inc. v. Mellon Ventures, L.P., 896 A.2d 616, 639 (Pa. Super. 2006).

This dispute is such a case. For these reasons, summary judgment is appropriate with regard to the remaining counts in the Amended Complaint.

BY THE COURT

_____ J.
MICHAEL J. LUCAS

## ORDER

AND NOW, this 15th day of March, 2017, for the reasons set forth in the above opinion, the Defendants Motions for Summary Judgment are GRANTED.

The Plaintiffs' Amended Complaint is dismissed with prejudice.

BY THE COURT

_____ J.
MICHAEL J. LUCAS